264 So.2d 518

**BONDED BUILDERS & SUPPLY COMPANY, Inc., a Corporation**

v.

**John W. LONG.**

**8 Div. 442.**

Supreme Court of Alabama.

May 25, 1972.

Rehearing Denied Aug. 3, 1972.

Kenneth Shelton, Hutson & Elrod, Decatur, for appellant.

Caddell, Shanks, Harris & Moores, Decatur, for appellee.

MADDOX, Justice.

This is an appeal from a final decree of the Circuit Court of Morgan County, in Equity. The trial judge, in his final decree set out his findings of fact, in part, as follows:

"This suit was initiated by a petition styled 'PETITION FOR A DECLARATORY JUDGMENT' filed in this Court on the 14th day of July, 1970, wherein the plaintiff, John W. Long, alleged that he had entered into a (sic) oral contract or arrangement with the defendant, Bonded Builders & Supply Company, Inc., on or about February 1st, 1960, whereby the plaintiff agreed to supervise the construction and sale of houses and the defendant agreed to furnish construction money for the construction of such houses and bookkeeping and collection services in connection with the construction and sale of said houses and collection of the proceeds of the sales thereof; that by the terms of the contract he was entitled to one-half of the profits earned on the houses that he built or sold thereunder; that the uncollected profits on these transactions were secured by mortgages and contracts which were payable to, maintained and held, including the records of payment, by the defendant; that the contract was terminated about the month of November, 1963, at which time it was agreed between the parties that the defendant would collect the unpaid balances representing uncollected profits on the houses so constructed and sold under said arrangement and would remit to the plaintiff his one-half of such installment profit collections less a collection charge of ten percent to be made by the defendant; that all books and records pertaining to such transactions are under the possession and exclusive control of the defendant and that the plaintiff does not have access thereto and has been denied access thereto after demand; that the defendant has not accounted to the plaintiff for all installment collections on such uncollected profits to which he is entitled and in which petition the plaintiff prayed that the Court grant to the plaintiff a discovery of the amount of indebtedness presently owed by the defendant to him and the amounts which may become due in the future and that the court require the defendant to account to the plaintiff and pay to plaintiff all amounts presently due and owing to him and require the defendant to promptly account to and pay to plaintiff all amounts which may be or become due in the future to the plaintiff on such installment profit collections and further prayed that the Court render a declaratory judgment and decree fixing and determining the amounts presently due by defendant to plaintiff and requiring immediate payment thereof and fixing and determining the amount which may be and become payable by the defendant to the plaintiff in the future and requiring that the defendant promptly account to the plaintiff for such amounts coming due in the future."

At the conclusion of the evidence the cause was submitted to the court on the pleadings and testimony adduced orally and the court rendered a decree: (1) awarding a money judgment in the amount of $116,980.47 to Long against Bonded Builders; (2) requiring Bonded Builders to collect installments due in the future; (3) adjudging and declaring that Long had a one-half interest in each of the mortgages unpaid at the time of the decree and that the title to Long's undivided one-half interest was held by Bonded Builders in trust for the use and benefit of Long and that Long was entitled to a strict accounting from Bonded on account of all such instruments; (4) ordering and decreeing that jurisdiction of the cause be retained for the purpose of making any orders in the future necessary to enforce provisions of the decree requiring future accounting; (5) taxing costs against Bonded. From this decree Bonded takes this appeal.

The issues presented by the appellant's Assignments of Error are:

I. Whether the trial court erred in finding that a joint venture came into existence? (Assignment 1)

II. Whether the court erred in finding that certain mortgages were assets of the joint adventure so as to make Bonded the trustee of Long's one-half interest in these mortgages? (Assignments 3, 9, 19)

III. Whether the court erred in finding that Long was entitled to an accounting from Bonded? (Assignment 4)

IV. Whether there was sufficient evidence to support the amount of judgment awarded? (Assignments 5, 6, 7, 8, 12)

V. Whether the court erred in requiring Bonded to collect future installments on the mortgages and to account for such collection? (Assignments 13, 14, 15).

VI. Whether the court erred in certain rulings on the admissibility of evidence? (Assignments 23, 24)

■ Assignments of Error 2, 10, 11, 16, 17, 18, 20, 21 and 22 are not argued in Bonded Builder's brief. They are deemed waived. Supreme Court Rule 9.

■ The first issue concerns the existence or non-existence of a joint venture between Bonded and Long. There is sufficient evidence in the record on which the trial court could base its finding that Bonded and Long were engaged in a joint venture. A joint adventure normally relates to a single transaction, but may comprehend a business to be continued for a period of years. Saunders v. McDonough, 191 Ala. 119, 67 So. 591 (1914). A joint enterprise has been defined as being:

"* * * (A) special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation, * * *. A joint adventure ordinarily contemplates an enterprise for commercial profit." 48 C.J.S. Joint Adventures § 1, pp. 801, 802.

■ There was evidence from Long and from Lloyd Dinsmore, President of Bonded, that Long had an interest in what was produced. Based on the facts of this case, and in view of the presumption in favor of the trial judge's finding of fact, since he saw and heard the witnesses, we find the trial court did not err in determining that a joint venture existed.

■■ In Assignments of Error 3, 9 and 19, Bonded asserts that the court erred in finding that the notes and mortgages were assets of the joint venture, and that Bonded as holder of the mortgages became a trustee of its co-adventurer, Long, with respect to his one-half interest. In Saunders v. McDonough, supra, this court held that a joint venture and a partnership are governed by essentially the same rules. See also, Wilson v. Southside Shopping Center, Inc., 280 Ala. 615, 197 So.2d 267 (1967). Property acquired by partners in a partnership business and for its purposes constitutes partnership assets, although the legal

title is taken in the name of one of the partners, and this rule applies to real property, as well as to personalty. 60 Am.Jur. 2d, Partnership, § 96, p. 25; Goldthwaite, Receiver v. Janney and Cheney, Trustees, 102 Ala. 431, 15 So. 560 (1893).

■ The court found there was a joint venture. This finding, as we have indicated, is supported by the evidence. In fact, Bonded's president testified that Long had an *interest* in what he did or what he produced. Having shown a joint venture, the fact that the mortgages were held by Bonded, could not destroy Long's interest in the mortgages. Bonded, as holder of title to the mortgages, became a trustee for the benefit of its co-adventurer, Long. Cf. Murphy v. Craft, 226 Ala. 407, 147 So. 176 (1933).

The third issue (Assignment of Error 4) is whether the court erred in finding that Long was entitled to an accounting from Bonded Builders. Bonded argues that Long's bill for accounting is barred by the statute of limitations in that more than six years has elapsed from the last known co-adventure transaction, citing Stovall v. Clay, 108 Ala. 105, 20 So. 387 (1895). Bonded argues that the six-year statute began to run at the time Long completed the last house for Bonded in February or March 1964. Under this theory, the instant suit would be barred in that suit was not filed until July 14, 1970.

There is evidence, however, that Bonded issued a check to Long as late as December 17, 1969, "subject to agreement on reverse side of check." Bonded had typed on the back of this check a notation: "Endorsement of this draft acknowledges payment in full of any and all indebtedness of any kind by the drawer to the drawee as of the date of this draft."

Dinsmore, President of Bonded, testified that in 1964 he and Long agreed that Long would be paid a percentage after all expenses, and it would be "tapered off" in approximately six years. He stated that in 1967 he started typing an endorsement on the checks which were issued to Long as set out above. Apparently, Long scratched through the typed notation, but the bank refused to honor the checks because of the alteration. Dinsmore stated he put the notation on the check, on advice of his lawyer, after Long came to see him and stated he (Long) thought he was not getting all that was due under the agreement.

■ In view of these facts, it appears that by issuing the checks, Bonded acknowledged that an amount was due to Long under an antecedent agreement, even though payment of the check was not made. Under such facts, the statute of limitations would be tolled by such acknowledgment. Cf. Wentland v. Stewart, 236 Iowa 661, 19 N.W.2d 661 (1945); Victory Gravel Co. v. Dyer, 17 La.App. 123, 134 So. 701 (1931); 54 C.J.S. Limitations of Actions § 314, p. 389.

■ We also think the suit here should be governed by the same rules which apply in cases of a dissolved partnership. Such suit is barred unless commenced within six years of the last item of debit or credit, or other like joint venture transaction, on an account between the joint-adventurers, from which a promise on the part of one co-adventurer may be implied to pay any balance that might be due by him as final settlement. See Wells v. Brown, 83 Ala. 161, 3 So. 439 (1887). Under this rule, the present suit was not barred by the statute of limitations.

■ The fourth issue (Assignments of Error 5, 6, 7, 8 and 12) is whether the court erred in finding there was a balance of $116,980.47 due and owing by Bonded to Long. Dinsmore, as president of Bonded, testified that the original total amount of the 112 mortgages was approximately $350,000 and that the principal balance as of the date of trial was over $130,000. The difference is approximately $210,000 collected on the principal alone, not including the interest collected.

In view of the evidence that Long was entitled to one-half of the principal and interest collected, less the ten percent collection fee and the amount paid by Bonded, these facts would justify a finding by the court that $116,980.47 was due Long

The record does not show how the judge calculated the amount due, but Long testified as to the 112 mortgage transactions and Bonded furnished payment cards on 69 of the transactions, and on 39 others it gave dates it had satisfied or transferred the mortgages. From the documents produced by Bonded, and the testimony of Long and Dinsmore, there was adequate evidence from which the court could have made its own calculations. Bonded complains that the court used amortization schedules in calculating the amounts due—both principal and interest—on each mortgage, and that these amortization schedules were not properly authenticated. Appellant does not say the schedules were not accurate computations, but that they were inadmissible. The record does not affirmatively show that the trial court used the amortization schedules, but even if used, there was testimony by a certified public accountant that the calculations on the amortization schedules were correct. The accountant testified that he assisted in the preparation of the exhibits which reflected what Long claimed was due. Bonded says that it is unreasonable to assume that each mortgage was paid on time. However, Bonded had responsibility to keep the records and some of the records were lost. It is undisputed that Bonded's agents refused to show the records to Long after termination of the joint venture but before all profits were distributed. It has been said:

"The refusal or failure of a trustee to account furnishes a good reason for adopting against him the most rigid rule of calculation, and if a trustee does not keep clear, distinct and accurate accounts, all intendments and presumptions are against him." 54 Am.Jur. 398, Trusts, § 499.

Thus, the decree is not palpably erroneous. Sims v. Reinert, 285 Ala. 658, 235 So.2d 802 (1970).

In Assignment of Error 6, Bonded contends that the court erred in finding that Long was entitled to interest on the judgment in the amount of $116,980.47. Assuming that this assignment, which is argued in bulk with assignments questioning the amount of the judgment, is related to those assignments, we nevertheless find it is without merit. Admittedly, the court made a finding that there was a balance due Long by Bonded in the amount of $116,980.47, *including interest,* but the amount of interest is not shown, and in the judgment itself it is stated that Long have and recover of Bonded Builders "the amount of $116,980.47, for which let execution issue." As we view the judgment, no interest was awarded and in view of this fact, we see no prejudicial error in the "finding" of the court. In view of the fact that the trial court found that there was a joint venture, Long was entitled to one-half of the mortgage payments—including principal and *interest.* We must assume that is the *interest* to which the court was referring in its finding of fact.

The fifth issue (Assignments of Error 13, 14 and 15) for consideration is whether the court erred in requiring Bonded to collect *future* installments on the mortgages and to account for such collections. Bonded argues the court erred in decreeing specific performance of a contract for the performance of personal services. This argument is not persuasive in that the decree of the lower court was not for specific performance of a personal service but was for an accounting as to future collections. The following law stated in 81 C.J.S. Specific Performance § 82, p. 593, is applicable:

"A decree determining the rights of parties who acquired property as a part of a joint enterprise and providing that one of parties must continue to contribute his services in the maintenance and

operation of the property has been held not to violate a statute forbidding the specific performance of personal service employment contracts."

 Assignment of Error 23, concerning the court's sustaining an objection to a question put to Long by Bonded as to Long's interpretation of the legal relationship between the parties, is not argued in the appellant's brief. Nor is any authority cited in the appellant's very brief treatment of Assignment 24. Thus, appellant's brief merely copies the assignments of error without substantial argument or citation of authority. Review of these assignments is not warranted. Gilbert v. Vann, 284 Ala. 279, 224 So.2d 635 (1969).

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and BLOODWORTH, JJ., concur.