Harrison Wood brought this action against Shell Oil Company (hereinafter "Shell Oil"), Parker Shell, and others to recover damages Wood allegedly sustained when he slipped and fell on ice or other substances while on the premises of Parker Shell to purchase gasoline. The trial court granted summary judgment against Wood and in favor of Shell Oil on Wood's claim that Shell Oil was vicariously liable for the negligence of Parker Shell under the doctrine of respondeat superior on the theory that Parker Shell was the real or apparent agent of Shell Oil. Wood appeals.[1] We affirm.
The issue presented is whether Wood has provided a scintilla of evidence to make the existence of an agency relationship between Shell Oil and Parker Shell a jury question. Wood contends that the terms of a lease and dealer's agreement between Shell Oil and Parker Shell, along with the use of Shell Oil's insignia at Parker Shell's premises, provide the requisite scintilla of evidence necessary to allow the jury to infer the existence of an agency relationship between Shell Oil and Parker Shell. We disagree.
Summary judgment on the issue of agency is generally inappropriate because this issue is a question of fact to be determined by the trier of fact. Oliver v. Taylor,394 So.2d 945 (Ala. 1981). This is not to say, however, that agency may be *Page 1036 
presumed; the party asserting it has the burden of adducing sufficient evidence to prove its existence. Federal Land Bankof New Orleans v. Jones, 456 So.2d 1 (Ala. 1984). A scintilla of evidence on the agency issue must be presented in order to defeat a motion for summary judgment. Cheatham v. GeneralMotors Corp., 456 So.2d 1101 (Ala.Civ.App. 1984). We are of the opinion that Wood has failed to provide even a scintilla of evidence in support of a finding of either an actual agency relationship between Shell Oil and Parker Shell or an agency by estoppel.
The test to be applied in determining the existence of an agency relationship under the doctrine of respondent superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance. Williams v.Tennessee River Pulp Paper Co., 442 So.2d 20 (Ala. 1983). The retained right to supervise the alleged agent to determine if that person conforms to the performance required by a contract with the asserted principal does not, itself, establish control. Williams, supra.
In the case at bar, Shell Oil was the owner of the real property and leased it to Parker Shell. This relationship was evidenced by a written lease and a dealer agreement.
Shell Oil relies on the following provisions in these two contracts in support of its position that the contracts do not provide a scintilla of evidence to support the existence of an agency relationship. The lease provides in part:
 12. LESSEE'S BUSINESS. Nothing in this Lease shall be construed as reserving to Shell any right to exercise any control over, or to direct in any respect the conduct or management of, the business or operations of Lessee on the Premises; but the entire control and direction of such business and operations shall be and remain in Lessee. . . .
The dealer agreement states in part:
 19. DEALER'S INDEPENDENCE. Dealer is an independent businessman, and nothing in this Agreement shall be construed as reserving to Shell any right to exercise any control over, or to direct in any respect the conduct or management of, Dealer's business or operations conducted pursuant to this Agreement. . . .
Both the lease and the dealer agreement provided that the lessee's maintenance obligations required it to "Remove snow and ice from the Premises (including adjacent sidewalks, driveways and easements)." Shell Oil also points out that pursuant to the lease and the dealer agreement, Parker Shell purchased gasoline and other products from Shell Oil, taking title thereto, and retailed these products to Parker Shell's customers. The employees of Parker Shell received all compensation and benefits from Parker Shell, and Parker Shell had exclusive authority for hiring and firing its employees. Parker Shell was not obligated to accept advertising material from Shell Oil; it determined for itself what products, if any, it wished to purchase from Shell Oil, and in what quantities; it was free to purchase and sell products of suppliers other than Shell Oil; it determined the retail price to be charged for the sale of its products; it purchased its own insurance and was not required to make reports to Shell Oil. In addition, Shell Oil refers to the deposition of the owner of Parker Shell, John Parker, in which Parker stated that Shell Oil did not interfere in the daily operation of the station and did not inspect the service station premises for safety.
On the other hand, Wood argues that the lease and the dealer agreement provide a scintilla of evidence on the issue of actual agency. The terms of the lease and the dealer agreement require that the lessee/dealer (Parker Shell) keep the service station open 24 hours each day; that Shell Oil approve all alterations on the premises; that the lessee maintain the premises and conduct repairs, including painting and checking for leakage in storage tanks, in accordance with Shell Oil's specifications or recommendations; that the lessee maintain a station that "shall be of an architectural *Page 1037 
design, style, color scheme and layout acceptable to and approved by Shell as being in accordance with Shell's customary motor fuel station standards and specifications"; that the premises not be used for any purpose other than an automobile service station without the "prior written consent of Shell"; that the dealer "diligently and efficiently merchandise and promote such petroleum products as may be purchased by dealer"; that all mechanical work performed by dealer and employees be done in a workmanlike manner using only "first-class new materials and parts," except when a customer specifies otherwise; that the dealer maintain an adequate and competent staff of employees, but reserving to Shell Oil the right to offer supplemental training to the dealer's employees; that the dealer conduct its operations in a "business-like manner" and respond to customer complaints promptly and take immediate action to resolve complaints; that the dealer and employees "wear clean uniforms of a type and style approved by Shell"; that the dealer obtain Shell Oil's approval to display certain signs or posters on its premises; that the dealer obtain approval from Shell Oil for the installation of vending machinery or display equipment for merchandise; that the dealer keep the premises free of persons who have no proper business purpose on the premises; that the dealer maintain the premises in conformance with Shell Oil's "Appearance Guide," which "provides guidelines of objectives as to the operating and appearance standards established for Shell Oil automobile service stations"; and that the dealer notify Shell Oil of all occurrences of injury, death, or damage to persons within 24 hours. Also, the terms provide that Shell Oil retains the right to inspect the dealer's premises and the dealer's books and records to the extent necessary to determine compliance with the terms of the agreement; and that Shell Oil may terminate the agreement, at its option, for failure of the dealer to comply or exert good faith efforts to carry out the provisions of the dealer agreement or failure of the dealer to operate for seven consecutive days or for a lesser period if it constitutes an unreasonable time.
In addition to relying on the terms of the lease and the dealer agreement, Wood relies on the fact that John Parker stated in his deposition that Shell Oil provided awards to its dealers based upon cleanliness, appearance, and professionalism, provided service or product bulletins, and sponsored dealer meetings and sales promotions twice each year.
We are of the opinion that Wood has produced no evidence that Shell Oil retained any right of control over the manner in which Parker Shell performed in order to meet the requirements of the lease and dealer agreement. Although the lease and the dealer agreement specify, in some detail, what Parker Shell must do in order to conform to the terms of these contracts, and gives Shell Oil a right to approve certain aspects of Parker Shell's operation, they do not determine how Parker Shell is to achieve compliance with these terms. Of course, a contract which, on its face, directly disclaims any agency relationship or which does not by its terms create such a relationship, will not preclude the finding of agency if there is independent evidence of a retained right of Control. Bond v.Trim-Line, Inc., 465 So.2d 365 (Ala. 1985). However, Wood has not provided any independent evidence regarding the relationship between Shell Oil and Parker Shell from which a jury could infer an agency relationship. Shell Oil's motion for summary judgment on the issue of actual authority was properly granted.
Wood argues that the display of Shell Oil's logo on Parker Shell's premises and on the uniforms of its employees provides the requisite scintilla of evidence necessary to infer an agency relationship based upon "apparent authority" or "agency by estoppel."
In Union Oil Co. of California v. Crane, 288 Ala. 173,258 So.2d 882 (1972), the plaintiff attempted to establish an agency relationship between the lessor oil company and the lessee service station under *Page 1038 
the same theory. The Crane court stated:
 The following general statement of the application of "agency by estoppel" theory appears in Pearson v. Agricultural Insurance Company, 247 Ala. 485, 488, 25 So.2d 164:
 "While some suggestion has been made that a distinction exists between apparent authority and authority grounded on estoppel, 2 C.J.S. Agency § 96, p. 1208, our cases and authority generally base the two upon the same elements.
 "`"As between the principal and third persons, mutual rights and liabilities are governed by the apparent scope of the agent's authority which the principal has held out the agent as possessing, or which he has permitted the agent to represent that he possesses and which the principal is estopped to deny."'
 "`Such apparent authority is the real authority so far as it affects the rights of a third party without knowledge or notice. * * *' Patterson v. Williams, 206 Ala. 527, 528, 91 So. 315.
 "`When one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency. * * *' Halle v. Brooks, 209 Ala. 486, 487, 96 So. 341, 342.
 "`The apparent authority of the agent is the same, and is based upon the same elements as the authority created by the estoppel of the principal to deny the agent's authority. . . .'"
288 Ala. at 178, 258 So.2d at 885-86.
The Crane Court held that there was no evidence that the plaintiff had relied upon the holding out of the lessee service station as the apparent agent of the lessor oil company, and, therefore, that no agency relationship under this theory could be established. This holding was rendered despite the existence of the following evidence:
 Mr. Britt signed a lease with Pure Oil Company in April of 1959 and continued to operate the station from that date through the time of the accident. Clyde Crane had traded almost exclusively with this station for one and one-half years before the accident. Clyde Crane came on the premises strictly for business. The station had a large sign indicating it was a Pure Oil station, and another sign read "Britt's Pure Oil Station." The gas pumps had "Pure Firebird" and other symbols indicating it was a Pure Oil gas station. Pure Oil representatives were often at the station to deliver gas and for other purposes. Mr. Britt sold many products of Pure Oil, such as gas, oil, lubricants, grease and tires. Many of such products had Pure Oil's name and insignia on them. Clyde Crane testified he noticed at all times that these products were being sold and he, in fact purchased a cushion with a Pure Oil symbol. Mr. Britt had worn a uniform at all times since 1957. Clyde Crane testified he noticed that at all times Mr. Britt always wore a Pure Oil uniform, which had markings on the cap and shirt advertising Pure Oil. The attendant, Leroy Lyon, occasionally wore a Pure Oil uniform.
288 Ala. at 178, 258 So.2d at 885.
The Crane Court also distinguished an earlier case, StandardOil Co. v. Gentry, 241 Ala. 62, 1 So.2d 29 (1941), in which this Court had held that a plaintiff who had slipped and fallen at a service station had made out a jury question on the issue of the agency relationship between the lessor oil company and lessee service station under the "agency by estoppel" theory. The Crane Court observed:
 In that case the plaintiff's testimony tended to show his reason for transferring his business was an unsatisfactory experience with an independent operator and desire to do business with a more responsible party. A Standard Oil sign *Page 1039 
exhibited to the public, a license in the office, both the telephone and city directories, and all other indications pointed to a continued operation of this station by the company. The Court found the plaintiff had no basis for knowing that there has been a change in the operation of the station. The plaintiff's evidence tended to show that he relied upon the apparent operation by the company in continuing to do business at the station.
288 Ala. at 179, 258 So.2d at 886.
We are of the opinion that Wood has failed to prove any reliance upon the authority of Parker Shell that would make out a jury question on the issue of apparent authority or agency by estoppel. Wood has not provided any evidence that he did business with Parker Shell because of a desire to do business with a more responsible party (i.e., Shell Oil). Wood had no Shell credit card, nor is there any other evidence that might indicate that Wood's reliance on Parker Shell was in any way attributable to his confidence in Shell Oil. Additionally, there is no evidence, such as that in Gentry, that the plaintiff had relied upon a continued operation of the service station by the lessor oil company following a change in operation of the station from the oil company to the lessee. Moreover, the vast majority of the courts have held that the fact that the plaintiff testifies that the lessor oil company's distinctive logo displayed upon signs, literature, products, and employee uniforms led him or her to assume that it was operated by the oil company is not sufficient, in itself, to create an inference of agency, because it is common knowledge among the general public that such a logo is often displayed by independent dealers and that the only representation made by such displays is that the oil company's gasoline is sold at the service station. See, e.g., Cawthon v. Phillips Petroleum Co.,124 So.2d 517 (Fla.Dist.Ct.App. 1960); Manis v. Gulf OilCorporation, 124 Ga. App. 638, 185 S.E.2d 589 (1971); Levine v.Standard Oil Co., 249 Miss. 651, 163 So.2d 750 (1964). Seegenerally, Annot. 83 A.L.R.2d 1282 (1962), and cases cited therein.
For all of the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.
[1] Wood's wife filed a claim for loss of consortium. She, too, appeals. Because her claim is derivative, we shall refer in our opinion only to Harrison Wood.