Louie J. Carlton sued Richard Clark Lewis d/b/a Dairy Queen; Alabama Dairy Queen, Inc.; and International Dairy Queen, Inc., seeking damages for the wrongful death of his wife, Linda Pauline Carlton. Carlton's amended complaint alleged that defendants Richard Clark Lewis and Alabama Dairy Queen, Inc., and International Dairy Queen, Inc., (both Dairy Queen corporations are hereafter referred to as "Alabama Dairy Queen") were participants in a joint venture.
Alabama Dairy Queen filed a motion for summary judgment, denying the existence of any evidence to support a finding of a joint venture or agency relationship. The trial court granted the summary judgment, *Page 922 
which was made final pursuant to A.R.Civ.P. 54(b). Plaintiff appeals.
On March 10, 1985, Linda Pauline Carlton was driving an automobile along Highway 75 near Oneonta, in Blount County. Her automobile slid on an oil spill on the highway and collided with an 18-wheel truck. She was killed.
The plaintiff alleged that on that same day, defendants Richard Clark Lewis d/b/a Dairy Queen and Alabama Dairy Queen, or their agents, were transporting discarded cooking oil products from store number 47 located in Oneonta along Highway 75 near Oneonta. The plaintiff contends that these defendants or their agents caused or allowed the cooking oil to spill along the highway.
Before the accident, Richard Clark Lewis and Alabama Dairy Queen had entered into a contract that was in effect at all times pertinent to this case. The agreement allowed for Alabama Dairy Queen to
 "inspect licensee's Dairy Queen store, lands and freezers, and to test, sample and inspect all of his supplies, products and materials of all kinds, the preparation and formulation thereof and the conditions of sanitation and cleanliness in the production, handling and serving thereof."
Other important provisions of the contract were:
 "[S]tore must hire efficient, competent, sober employees who must work in uniforms approved by the company"
 "[S]ubstantial uniformity shall be maintained in the types, standard and quality of 'Dairy Queen' stores, the mix and freezers used therein and the conditions of preparation and sale of the product."
 "[Licensee shall] produce and sell the 'Dairy Queen' product only in a store constructed in accordance with the plans furnished, or as approved by the Company."
 "Alabama Dairy Queen, Inc. has the right to control all litigation relative to a breach of a trademark agreement."
 "Licensee further covenants and agrees to purchase and maintain in full force and effect, at Licensee's sole expense, liability insurance in an amount not less than $100,000 insuring both parties hereto from liability. . . ."
The contract provided that the store must use a Dairy Queen Freezer, and that Alabama Dairy Queen has the right to require the store to open for business at least 335 days per year. Another important part of the agreement is that Lewis was to pay Alabama Dairy Queen 42 cents over its cost for each gallon of liquid "mix" used in making the dairy product.
Alabama Dairy Queen did not participate in the training of any employees or play any part in the preparation or disposal of non-ice cream foods. Alabama Dairy Queen did not directly participate in any profits and did not participate in any losses incurred by the Oneonta store. Alabama Dairy Queen's profit was derived from the sell of its mix to Lewis.
In order to hold Alabama Dairy Queen vicariously liable for the alleged wrongful acts or omissions of Richard Clark Lewis d/b/a Dairy Queen, the plaintiff asserts that a joint venture existed between Lewis and Alabama Dairy Queen. Under Alabama case law, if the relationship between Lewis and Alabama Dairy Queen is held to be a joint venture, it would be governed by the law of partnerships. Bonded Builders Supply Co. v. Long,288 Ala. 669, 264 So.2d 518, (1972); Saunders v. McDonough,191 Ala. 119, 125, 67 So. 591 (1914).
Partnership law imposes vicarious liability on a partner for the wrongful acts or omissions of other partners in the ordinary course of business, Code 1975, § 10-8-53; this is because partners are agents of one another and are, by the very *Page 923 
definition of "agent", acting on behalf of one another and subject to each other's control. See Orr, Jackson Co. v.Perry, 16 Ala. App. 658, 81 So. 150 (1919). Therefore, in order for joint venturers to be held vicariously liable for one another's negligent acts done within the scope of the joint venture, there must at least be a right to direct and govern the movements and conduct of each other in respect to the undertaking, i.e., there must be mutual agency. See, CrescentMotor Co. v. Stone, 211 Ala. 516, 101 So. 49, 51 (1924); Moorev. Merchants Planters Bank, 434 So.2d 751 (Ala. 1983). In the present case, the real issue is one of agency. Only if Lewis d/b/a Dairy Queen was acting as an agent of Alabama Dairy Queen could vicarious liability be imposed upon Alabama Dairy Queen. The question of agency is a more appropriate focus, than the question of whether there was a joint venture, because agency would be the primary source of liability in the present case.
Summary judgment on the issue of agency is generally inappropriate, because this issue usually is a question to be determined by the trier of fact. However, when a defendant's liability is based on agency, agency may not be presumed; evidence of agency must be presented in response to a defendant's properly supported summary judgment motion, in order for the motion to be defeated. Wood v. Shell Oil Co.,495 So.2d 1034, 1036 (Ala. 1986); see Celotex Corp. v. Catrett,477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The scintilla rule requires only that the plaintiff furnish at least a "scintilla" — which we define as a mere gleam, a glimmer, a spark, the least bit, or the smallest trace of evidence — in support of his complaint. Cheatham v. General Motors Corp.,456 So.2d 1101, 1103 (Ala.Civ.App. 1984). This glimmer or spark can come from the evidence directly or from reasonable inferences drawn from the evidence. Id. We will determine whether there is any evidence to support a finding of an agency relationship between Alabama Dairy Queen and Richard Clark Lewis d/b/a Dairy Queen. But first, we must determine what proof is required to show an agency relationship.
The test to be applied in determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal has control over the manner of the alleged agent's performance. However, the right to determine if an alleged agent is conforming to the requirements of a contract does not, in itself, establish control.Williams v. Tennessee River Pulp Paper Co., 442 So.2d 20
(Ala. 1983); Wood v. Shell Oil Co., 495 So.2d 1034, 1036
(Ala. 1986).
First, we will determine whether there is any evidence that the employee in control of the grease tank at the time of this alleged leakage or spillage was acting directly as an agent for Alabama Dairy Queen. If not, we will determine whether the contract results in an agency relationship.
Deposition testimony indicates that Dewayne Morton, assistant manager of Lewis's Dairy Queen store, towed the tank of grease down Highway 75 in order to dispose of it at a farm. His deposition also indicates that the tank was filled with cooking oil gathered from the cooking process. The cooking oil would be gathered at the stove and taken outside and placed in this tank, which would later be towed away. Mr. Morton was an employee of Lewis and was in no way supervised by Alabama Dairy Queen. Morton received no instructions from Alabama Dairy Queen as to the method of preparation of fried foods or as to the disposal of the grease by-product. There were no actions taken by Alabama Dairy Queen to indicate that it controlled Mr. Morton's activity as to the disposal of the grease. In essence, the plaintiff bases his assertion that Lewis and the employees of his Dairy Queen store were acting as agents of Alabama Dairy Queen on the basis of the contract between Lewis and Alabama Dairy Queen.
In Wood v. Shell Oil Co., supra, where a similar contract existed, the plaintiff sued Shell Oil Company and Parker Shell[1]
to *Page 924 
recover damages for injuries allegedly sustained when he slipped and fell on the premises of Parker Shell. The plaintiff asserted that Shell Oil Company was vicariously liable for the negligence of Parker Shell under the doctrine of respondent superior. Summary judgment was granted to Shell Oil Company and Parker Shell, and the issue addressed on appeal was whether a scintilla of evidence was established to allow the jury to infer the existence of an agency relationship between Shell Oil and Parker Shell. Plaintiff contended that the terms of the lease and the dealer's agreement, in conjunction with the use of the Shell Oil insignia, implied the existence of an agency relationship. This Court affirmed the summary judgment.
In the Wood case the Court noted several factors that are also found in this case. Pursuant to the lease, Parker Shell, the dealer, had purchased gasoline and other products from Shell Oil and had retailed these products to the general public. The employees of Parker Shell received all their compensation and benefits from Parker Shell, and Parker Shell had exclusive authority for hiring and firing them. Parker Shell was not obligated to accept advertising material from Shell Oil; it determined for itself what products, if any, it wished to purchase from Shell Oil and in what quantities; it was free to purchase and sell products of suppliers other than Shell Oil; and it determined the retail price to be charged for the sale of its products. Further, by deposition, the dealer testified that Shell Oil did not interfere in the daily operation of the station and did not inspect the service station's premises for safety.
Also, the plaintiff in Wood cited contract provisions calling for: (1) dealer to remain open 24 hours per day; (2) Shell Oil's approval of all alterations on the premises; (3) dealer to maintain the premises and to make repairs, including painting and checking for leakage in storage tanks, in accordance with Shell Oil's specifications or recommendations; (4) dealer's station to be of an architectural design approved by Shell Oil; (5) dealer to diligently merchandise and promote petroleum products purchased by the dealer; (6) mechanical work performed to be done in a workmanlike manner; (7) dealer to maintain an adequate and competent staff of employees; (8) Shell Oil to have the right to offer supplemental training to the dealer's employees; (9) dealer and employees to wear clean uniforms of a type and style approved by Shell Oil; (10) dealer to notify Shell Oil of any injuries or damage; (11) Shell Oil to have the right to inspect the dealer's premises, books, and records to determine compliance with the terms of the dealer agreement; and (12) Shell Oil to have the right to terminate the agreement, at its option, for failure of the dealer to carry out these provisions. In addition to these terms and conditions, the plaintiff cited the dealer's testimony that Shell Oil provided awards to its dealers based upon cleanliness, appearance, and professionalism, provided service and/or product bulletins, and sponsored dealer meetings and promotions twice each year. 495 So.2d at 1037.
Based on the above evidence, this Court found the following:
 "[There is no evidence that Shell Oil] retained any right or control over the manner in which Parker Shell performed in order to meet the requirements of the lease and dealer agreement. Although the lease and the dealer agreement specify, in some detail, what Parker Shell must do in order to conform to the terms of these contracts, and gives Shell Oil the right to approve certain aspects of Parker Shell's operation, they do not determine how Parker Shell is to achieve compliance with these terms."
Wood, 495 So.2d at 1037 (emphasis original). Similarly, inMurphy v. Holiday Inns, Inc., 216 Va. 490, 219 S.E.2d 874
(1975), the Supreme Court of Virginia determined that a mere franchise agreement did not make the franchisee an agent of the franchisor. There must exist some control of, or right to control, the methods or details of doing the work. Id.,216 Va. at 494-95, 219 S.E.2d at 877. *Page 925 
Lewis's Dairy Queen store has never participated in Alabama Dairy Queen's organized food program. Non-ice cream products were not purchased from Alabama Dairy Queen, nor was any of the equipment used to cook those products provided by Alabama Dairy Queen. The grease alleged to have caused this accident was a by-product of the cooking of non-ice cream products at Lewis's store. Alabama Dairy Queen representatives have at no time made any recommendation as to the method of preparation of non-ice cream products or the disposal of cooking oil by-products.
Non-ice cream products, such as hamburgers, were purchased elsewhere and prepared as Lewis's store saw fit. Lewis d/b/a Dairy Queen clearly had sole control over all non-ice cream products. There is no evidence that Alabama Dairy Queen had any control over the operation of the kitchen or the disposal of the grease.
Furthermore, Lewis had the authority to hire and fire employees, to determine the methods by which they were trained, and to set their wages. The store agreement did not negate this authority, nor did it confer such authority upon Alabama Dairy Queen. Lewis could decide the amount of ice cream mix to be purchased from Alabama Dairy Queen; he could order any and all non-mix products that he chose, without restriction; he could set prices for any items sold; and he could prepare non-ice cream products in any way he deemed fit.
The only evidence of control presented by the plaintiff was the agreement between Lewis and Alabama Dairy Queen, which was substantially similar to the one in the Wood case. We find this case analogous to the Wood case. While the plaintiff claims that the "Dairy Queen/Store Agreement" is distinguishable from the contract in Wood, the plaintiff did not point to any substantial differences. The "Dairy Queen/Store Agreement" in no way determined the methods and the manner of operation to be employed by Richard Clark Lewis at the Oneonta store in regard to the manner of the preparing and disposing of food. We can not find any evidence that Lewis d/b/a Dairy Queen was acting as an agent for Alabama Dairy Queen.
AFFIRMED.
MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.
[1] The defendant referred to in that case as "Parker Shell" was apparently a service station business owned by an individual named John Parker.