ALMON, Justice.
The plaintiff, Coleman White, appeals from a summary judgment for the defendant in a conversion action. White owned a Timberjack skidder that was used without his permission to remove a bulldozer owned by the Alabama Forestry Commission from a mud bog. The defendant, Charles Hall, Jr., was a district forester for the Commission and was the supervisor of the employees attempting to remove the bulldozer from the mud.
While the Commission employees were attempting to move the bulldozer, an individual named Doug Turner came up to them and said that a skidder was parked on the other side of the hill. Hall stated in his deposition:
“[Turner] represented himself as working for Mr. White, the owner of the skid-der. That was the understanding.
“[Turner] said it was over the hill. I ... asked him who owned it. He told me Coleman White. I said, ‘Well, is it being used today?’ He said it wasn’t, that Coleman wasn’t logging today, that he was at home.
“I told Doug, I said, ‘Well, we don’t want to use the skidder, unless Mr. White says it’s okay.’ He said, ‘Well, I can go call him.’ ...
“Anyway, it ended up that I sent him with Darryl [Durham, a Forestry Commission employee] to call Mr. White. I said, ‘If you get Mr. White and he says it’s okay, then you can bring the skidder back over here.
“Prior sometime in our conversation, we were talking about who was going to drive it and stuff. [Turner] said, ‘Well, I drive skidders all the time.’ And in his conversation — I don’t know exactly the terminology used, but it was my impression that he was a regular employee of Mr. White. He even took his arm and jangled some keys on his side that was hanging there and said, ‘I have a key to the skidder right here.’
“I had no reason to doubt him, so I sent him and one of our employees to carry him. He even knew a neighbor’s phone that they could use to call Mr. White. I said, ‘If you get with him and he says it’s okay, then you can bring it back.’
“Q. What happened next, Mr. Hall?
“A. They came back with the skidder.
“Q. When you say ‘they,’ who is that?
“A. Well, the other employee came back in the pickup. Doug came over the hill driving the skidder.
[[Image here]]
“Q. What happened next?
“A. Well, we just hooked the winch, the cables from the winch and skidder up to the tractor and used it for an hour or two there. Doug was the operator of it. We didn’t have any luck pulling the tractor out, and Doug drove it back over the hill.
[[Image here]]
“Q. Before the tractor or the skidder was used, did you ask Mr. Durham did they get in touch with Mr. White?
“A. No.
“Q. Well, did he say whether they had or not?
“A. No.
“Q. Did Mr. Turner say whether they had gotten in touch with Mr. White or not?
“A. I found out after the skidder went back that they had not gotten in touch with Mr. White.”
Turner testified in deposition that, after he was unable to reach White by telephone, he and Darryl Durham left the house where they were using the telephone, and that the following then occurred:
“Darryl said, ‘Well, do you think he would mind if we used it? I said, ‘Well, I’ve worked around him, and he’s a fine *830 fellow, Coleman is. You can’t beat him.’ He said, ‘Do you think he would care if we used it?’ I said, T can’t say whether he would or not, but I’m sure he wouldn’t.’ Darryl said, ‘Well, we’ll just confiscate it.’ ”
Turner denied implying that he worked for White, but admitted indicating that he had a key to the skidder, although he testified at deposition that he only had a master key that would fit any skidder. He also testified that a skidder does not need a key, and that the operator’s compartment was not locked when he entered it to start the skid-der. Both Hall and Turner stated that the skidder was not damaged except for two cables breaking, which they said was considered routine wear and tear. Turner stated that he saw the skidder being used in the woods a day or two later and that it appeared to be operating normally.
White gave an affidavit stating that the door of the skidder had been locked and that, when he returned to use the skidder the next day, the door had been forced open. He also submitted the affidavit of a mechanic who said that the door was hard to open and the seat was broken, but that, although White had told him the Forestry Commission employees had damaged the transmission, it was his opinion that there was nothing wrong with the transmission. White then gave a supplemental affidavit, stating:
“The person or persons that took my skidder on March 13, 1989, among other damages, broke the hoses to the transmission and the transmission had no fluid left in it. It had been operated by them without any transmission fluid. I had to buy 2 hydraulic hoses and 4 gallons of transmission fluid to put in the skidder on March 14, 1989.”
The trial court’s order recites:
“Summary Judgment is due to be granted on the basis that, under the pleadings and evidence, the defendant did not convert plaintiff's property. The uncontro-verted evidence is that the defendant was merely the recipient of gratuitous aid from Doug Turner, and took no action himself that would constitute a conversion.”
In support of the summary judgment, Hall argues, first, that there was no evidence that he was guilty of conversion and, second, that he is protected by the substantive immunity given to state officers in the performance of discretionary functions. We agree that the evidence would not support a finding that Hall authorized, ratified, or otherwise approved a taking of the skidder without White’s permission. We also find no evidence that Turner was acting as Hall’s agent in obtaining the skidder. As the trial court stated, Turner was simply rendering gratuitous aid, and Hall had no right to control Turner’s actions. “[W]hen a defendant’s liability is based on agency, agency may not be presumed; evidence of agency must be presented in response to a defendant’s properly supported summary judgment motion, in order for the motion to be defeated.” Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921 (Ala.1988).
To the extent that Durham was acting as an agent of Hall in accompanying Turner, the evidence would not support a finding of liability against Hall, for two reasons. One, assuming that Durham made the statement, “we’ll just confiscate it,” he was acting outside the scope of his authority. Two, to make Hall liable for Durham’s actions through the principle of respondeat superior would be to make him liable only in his official capacity and without any evidence of wrongdoing on his part. A state official may in certain circumstances be held liable for his own tor-tious acts, but there is no authority for holding a state official liable in his official or representative capacity for wrongful acts of other employees that the defendant did not order, approve, authorize, or ratify. See Barnes v. Dale, 530 So.2d 770 (Ala.1988). The evidence submitted on the summary judgment motion showed only (1) that Hall instructed Durham and Turner to bring the skidder if White gave his permission and (2) that he did not know that they had acted contrary to those instructions until after the skidder had been returned. *831 Thus, there was no evidence of approval, authorization, or ratification, and, therefore, Hall cannot be held liable for the alleged wrongful acts of Durham.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.