Patsy **FREEMAN** and Linda
Lamb, Plaintiffs,

v.

**SUDDLE ENTERPRISES, INC.**
**D/B/A Huddle House # 389,**
et al., Defendants.

No. CIV.A. 00–D–1583–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 18, 2001.

Samuel Fisher, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Eden J. Brown Gaines, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Alex L. Holtsford, Jr., Nix Holtsford Gilliland Higgins & Hitson PC, Montgomery, AL, Rick A. Howard, Nix Holtsford Gilliland Higgins & Hitson PC, Montgomery, AL, Heather Fisher Lindsay, Johnston, Barton, Proctor & Powell, LLP, Birmingham, AL, for Plaintiffs.

Julie S. Moody, Albrittons Clifton Alverson Moody & Bowden, PC, Andalusia, AL, John M. Peek, Peek & Weaver, PC, Andalusia, AL, Jeffrey W. Smith, Montgomery, AL, Heidi A. Wells, Lloyd, Gray & Whitehead, P.C., Birmingham, AL, Stephen E. Whitehead, Lloyd, Gray & Whitehead, P.C., Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Huddle House Restaurant, Inc.'s ("Huddle House") Motion For Summary Judgment ("Mot."), which was filed on August 10, 2001. Plaintiffs Patsy Freeman and Linda Lamb ("Freeman", "Lamb", "Plaintiffs") filed a timely Response ("Resp.") on September 6, to which Huddle House filed a Reply on September 13. Accompanying said Reply was a Motion To Strike certain portions of Plaintiffs' Response. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Huddle House's Motion To Strike is due to be denied and, further, that Huddle House's Motion For Summary Judgment is due to be granted.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

The court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

This determination involves applying substantive law to the substantive facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence presented. *See id.* at 248, 106 S.Ct. 2505; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-moving party, which must designate specific facts remaining for trial and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An action will be dismissed when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *See id.* at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND

Freeman brought the present action under Title VII of the Civil Rights Act alleging hostile work environment and retaliation against Huddle House, its franchisee Suddle Enterprises, Inc. d/b/a Huddle House # 389 ("Suddle"), and Suddle's Secretary, Frances Sasser ("Sasser"). A state law claim of negligent hiring was also brought against these defendants. Additionally, Freeman brought state law claims of outrage, invasion of privacy, assault and battery against the above Defendants and her co-worker Dwight Kelley. The final claim is one of defamation against Huddle House, Suddle, and Freeman's supervisor, Myra Grantham. Lamb subsequently became a party to the action alleging the same claims as Freeman.

In the matter presently before the court, Huddle House does not contest any of the factual allegations set forth in either of Plaintiffs' Complaints. Rather, Huddle House asserts that it cannot be found liable insofar as it is not and never was Plaintiffs' "employer" as the term is defined at 42 U.S.C. § 2000e(b). As such, the Motion presently before the court turns solely upon whether the facts surrounding Huddle House's relationship with Plaintiffs are sufficient to raise a genuine issue as to whether that relationship can properly be deemed one of employment.

Although Plaintiffs were officially employed as cooks by Suddle, (Am. Compl.¶¶ 10, 31) they allege that the nexus between Huddle House and Suddle is such that they can both be regarded as her employer. In support of this contention, Lamb states that, on numerous occasions, she observed Huddle House employees in the restaurant. (Lamb Decl. ¶ 2.) Indeed, she alleges that she was reprimanded by Sasser at the behest of these employees. (*Id.* at ¶¶ 2–3.) Specifically, Sasser indicated that "Corporate" did not wish for Lamb to allow the stove to become too hot. (*Id.* at ¶ 3.) On another occasion, Lamb was scolded for using profanity; she speculates that this reprimand was also directed by Huddle House. (*Id.* at ¶ 4.)

Huddle House counters that under its Franchise Agreement ("Agmt.") with Suddle, it reserved no control over the hiring, retention, or firing of employees. (Mot. at 2–3.) Although Huddle House required Suddle to hire an adequate number of staff prior to opening, Suddle performed all the hiring in this regard. (Agmt. at 19.) Additionally, Suddle was required to pay the taxes and to procure employment insurance. (*Id.* at 37–38.) Huddle House only required that management meet certain qualifications; Suddle retained all control over scheduling, wages, benefits, and vacations. (Mot. at 5.) Huddle House did provide training to facilitate the restaurant's opening, but it never again exercised any influence over the employee's activities. (*Id.*) Indeed, the Sassers, in their capacities as Suddle executives, signed an acknowledgment admitting that they, and not Huddle House, exercised sole control over all issues pertaining to terms and conditions of employment. (*Id.* at 4.)

Huddle House dictated guidelines as to the architectural layout of the restaurant as well as the employee apparel (Agmt. at 15–16), but Suddle selected the site for operations. (*Id.* at 8.) In fact, beyond ensuring compliance with the Franchise Agreement, no employee of Huddle House ever visited the restaurant in a business capacity. (Mot. at 5.) This required compliance did not extend beyond cosmetic maintenance and accordance with financial agreements. (*Id.* at 3–5.) Huddle House denies ever having acquired or sought any information as to hiring or firing of Suddle employees. (*Id.* at 5.)

## IV. DISCUSSION

■ According "a liberal construction of the term employer," the Eleventh Circuit has recognized three distinct theories under which multiple entities can be viewed in the aggregate. *Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332, 1341 (11th Cir.1999). Plaintiffs ask the court to view Huddle House and Suddle under the "agency" test, wherein the court seeks to determine whether "an employer delegates sufficient control of some traditional rights over an employee to a third party." *Id.* There is no dispute that Suddle was the Plaintiffs' employer at all times relevant to

the present action. In order to establish that they were also employed by Huddle House under the agency theory, Plaintiffs must demonstrate that Suddle's exercise of authority in the employment context was delegated to it by Huddle House, the true employer, but that Huddle House reserved the right to control Suddle's day-to-day decisions.[1] *Bahadirli v. Domino's Pizza, Inc.,* 873 F.Supp. 1528, 1537 (M.D.Ala. 1995) ("Of primary importance, then, is the right of the alleged principal to control the day to day functions of the alleged agent.").

■ Agency questions are fact intensive determinations, thereby precluding summary judgment in all but the weakest of cases. *See id.* Of course when a defendant's liability is based on agency, agency may not be presumed; the burden remains upon Plaintiffs to offer some demonstrative evidence to support a finding of agency. *Wood v. Shell Oil Co.,* 495 So.2d 1034, 1036 (Ala.1986). In this regard, Plaintiffs have attested that their work performance and demeanor were criticized under the rubric of corporate policy. While Huddle House objects to the form by which this evidence is proffered, it does not contradict the conclusions drawn therefrom.[2]

1. Courts have also examined cases involving franchisor/franchisee relationships under the "single employer" or "integrated enterprise" test, *see, e.g., Lockard v. Pizza Hut,* 162 F.3d 1062, 1069 (10th Cir.1998), wherein the court must determine whether "two ostensibly separate entities are highly integrated with respect to ownership and operations." *Lyes,* 166 F.3d at 1341 (internal quotations omitted). Predominant in this analysis is whether the two entities share centralized control of labor relations. *Thornton v. Mercantile Stores Co.,* 13 F.Supp.2d 1282, 1291 (M.D.Ala.1998). For present purposes, the court is satisfied that the agency analysis will yield the same conclusion as the integrated enterprise test; the level of control that Huddle House exercises over Suddle in the context of employment decisions is determinative of a finding

that it is an employer under Title VII. *See, e.g., Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2nd Cir.1995) (precluding summary judgment in face of evidence that "all major employment decisions" needed parent corporation's approval).

2. To the extent that Plaintiffs' affidavits are "speculative" or "hearsay," the court denies Huddle House's Motion to Strike, filed on September 13, 2001. Plaintiffs have asserted that they were told that "Corporate was very upset." (Lamb Aff. ¶ 3.) Highly relevant in a determination of agency is the concept of apparent authority. It is not so important that Huddle House was actually upset, but rather that Plaintiffs perceived that possibility as relevant as they went about their daily tasks. *See Bird v. Auto Owners Ins. Co.,* 572

Huddle House's position is that its franchise relationships center on the image conveyed to the consumer. Individual entrepreneurs license a trademark, an architecture, and a standardized menu from Huddle House in the hope that road-weary travelers will frequent their establishments, comforted by the assurance that the hash browns and coffee will be of the same quality in Andalusia as in Tuscaloosa. While corporate oversight is aimed at ensuring customer satisfaction in the products and services available at each link of the corporate chain, Huddle House argues that the scope of its control does not pervade the minutiae of employee interrelations. Indeed it has a document signed by Suddle purporting to acknowledge this distinction.[3]

The court does not believe that such a boiler-plate waiver should be dispositive concerning the present issue. Franchisors traditionally have used inordinate bargaining power and highly-paid legal departments to draft agreements limiting their vicarious liability in the tort context, but courts have consistently looked beyond such language, instead examining the "business realities" of the franchise relationship. *See generally Wu v. Dunkin' Donuts, Inc.,* 105 F.Supp.2d 83, 87–90 (E.D.N.Y.2000) (chronicling nationwide cases addressing franchisor liability). Furthermore, the court is not persuaded that a clear line so readily can be drawn between a corporate policy to convey an image of an establishment in which its cooks do not use vulgar language and one in which they do not grope one another in the presence of customers. (Compl.¶ 14.) Indeed, the court opines that a corporate-wide policy against sexual harassment might do wonders for the public relations image of Huddle House.

Considerations of economic efficiency notwithstanding, *see generally* Alan O. Sykes, *The Economics of Vicarious Liability,* 93 Yale L.J. 1231 (1984), the court does not find this to be the occasion to require franchisors to incorporate Title VII compliance provisions into their franchise agreements. Sexual harassment in the form of hostile work environment imputes an employer's vicarious liability only when that employer knows or should have known that an employee has been subjected to unwanted advances. *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir. 1982). Implicit in this rule is the idea that liability should extend only to those entities who are in a position to readily observe egregious behavior among co-workers and to adequately respond thereto. Plaintiffs have failed to provide the court with sufficient evidence to raise a genuine issue of material fact as to whether Huddle House was in such a position.

All indications suggest that Huddle House has made every effort to distance itself from the day-to-day employment actions undertaken by Suddle. The court

So.2d 394, 398 (Ala.1990) (outlining doctrine of apparent authority in Alabama agency law). In other words, the evidence is not offered for the truth asserted therein, but merely for the effect upon Plaintiffs' perceptions. *See* Fed.R.Evid. 801(d)(2)(D).

3. The precise language of said acknowledgment is as follows:

I hereby acknowledge that, as Operator, I shall be the sole employer of the employees in my franchised restaurant and solely responsible for the labor relations and employment practices in the franchised restaurant location. I agree that the employees in my franchised restaurant shall not be employees of Huddle House, Inc. and that Huddle House, Inc. shall have no control or liability concerning decisions related to the hiring, promotion, discipline, termination, amount of wages, benefits or scheduling of the employees in my franchised restaurant. (Mot. at 4.)

does not wish to reward such insouciance, and suspects that to do so would contravene the underlying policy of Title VII. Nonetheless, Plaintiffs simply have failed to adduce evidence sufficient to persuade the court to do otherwise. The occasional visit by a corporate representative to ensure general compliance with the franchise agreement is not enough for a jury to conclude that Huddle House should have been aware of the alleged discrimination. *Cf. Carlton v. Alabama Dairy Queen, Inc.*, 529 So.2d 921, 923 (Ala.1988) ("[T]he right to determine if an alleged agent is conforming to the requirements of a contract does not, in itself, establish control.") Nor did Plaintiffs ever direct any complaints in the direction of Huddle House which might have alerted it of the problem. Finally, and perhaps most significantly, Plaintiffs have offered no evidence indicating that Huddle House retained the authority to act even had it been made aware.

Courts that have found a franchisor to be an employer under Title VII have generally done so only after finding that the franchisor required that the franchisee adopt specific employment policies. *See Wu*, 105 F.Supp.2d at 89 ("In deciding whether the franchisor's actions give rise to a legal duty, courts typically draw distinctions between *recommendations* and *requirements*.") (emphasis in original); *see also Miller v. D.F. Zee's, Inc.*, 31 F.Supp.2d 792, 806–07 (D.Or.1998) (finding agency when franchisor required franchisee to hire, train, and supervise employees in accordance with extensive guidelines and where franchisor reserved right to impose discipline upon employees engaging in discriminatory acts). Not only did Huddle House not require Suddle to adopt specific employment practices, it failed even to offer suggestions in that regard. Whatever may be said about the irresponsibility of this corporate practice, it is insufficient to support a finding of agency.

The court is compelled to conclude that the facts viewed in the light most favorable to Plaintiffs, fall short of raising a genuine issue of materiality with respect to a finding that Huddle House employed Plaintiffs. The conclusion applies as much to Plaintiffs' Title VII claims against Huddle House as it does to the state law claims. The franchise agreement between Huddle House and Suddle simply does not establish a principal/agent relationship under Alabama law. As such, summary judgment is due to be granted in the favor of Huddle House as to all claims.

## V. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Huddle House's Motion to Strike be and the same is hereby DENIED. Furthermore, it is CONSIDERED and ORDERED that Huddle House's Motion For Summary Judgment be and the same is hereby GRANTED. Finally, there being no remaining claims against said Defendant, it is CONSIDERED and ORDERED that Huddle House be and the same is hereby DISMISSED as a party to this action.