The plaintiff, Marion Watson, individually and d/b/a Watson Grocery, appeals from *Page 1134 
a summary judgment in favor of the defendant, Auto-Owners Insurance Company ("Auto-Owners").
Watson argues that there were genuine issues of material fact and of law in the trial court and that, therefore, the trial court erred in entering the summary judgment.
We note at the outset that a summary judgment is not improper because there are issues of law. See Rule 56, Ala.R.Civ.P.;Berner v. Caldwell, 543 So.2d 686 (Ala. 1989). Rather, a summary judgment is improper where there are genuine issues of material fact. Id. Thus, the party moving for a summary judgment must establish a prima facie showing that there are no genuine issues of material fact. Id. If the movant makes such a showing, then the burden shifts to the nonmovant to demonstrate a genuine issue of material fact by "substantial evidence." Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, § 12-21-12.
We do not agree that there were genuine issues of material fact, and we note that the substance of Watson's arguments does not relate to this issue but, rather, to the trial court's application of the law to the facts. Watson and Auto-Owners disagree as to whether undisputed material facts support the legal conclusion that another defendant, Larry F. Holt, was an agent of Auto-Owners at the time of the events complained of so that Auto-Owners is vicariously liable for Holt's actions.
These facts are as follows.
Fowlkes Smith, Inc., an insurance agency, acts as a general agent for Auto-Owners and other insurers. Fowlkes Smith employee Henry S. Fowlkes met Holt, the owner of another insurance agency, at a convention. Later, Holt telephoned Henry Fowlkes and said that he was leaving the insurance business. Holt told Henry Fowlkes that he wanted to make sure that his clients would be taken care of. One of Holt's insurance clients was Watson. Fowlkes Smith had a strict policy against sharing or "brokering" insurance business with an agent from another company. Thus, Henry Fowlkes declined to assist Holt with any of Holt's clients. Holt assured Henry Fowlkes that he did not want to share in any transaction with a former client; all he wanted was "to make sure that his people were taken care of." On this explanation, Henry Fowlkes agreed to assist Watson and a few other previous clients of Holt's in seeking future coverage. Holt received no compensation relating to "former" clients that Henry Fowlkes sought coverage for.
Holt had, over the years, obtained insurance with various insurers for Watson through his insurance agency. Around the same time Holt was contacting Henry Fowlkes about seeking coverage for Watson, he contacted Watson and told Watson that a policy was coming due and solicited a premium payment from Watson for continued coverage. The renewal was for a company other than Auto-Owners; Watson had never previously had Auto-Owners coverage, nor did Auto-Owners have any agency agreement with Holt's company.
This renewal through Holt's company was for the same types of coverage that Holt had asked Henry Fowlkes to obtain for Watson.
Watson tendered two checks, totalling $2609, for the "renewal," payable to Holt's insurance agency.
Shortly thereafter, based on Holt's request that he "take care of" Watson, Henry Fowlkes sought Auto-Owners insurance coverage for Watson, using information about Watson provided by Holt. Henry Fowlkes, through Fowlkes Smith, obtained the coverage and advanced Auto-Owners a payment for this coverage. In turn, Henry Fowlkes sent Watson a bill for the coverage. Watson received the bill in the mail, along with two Auto-Owners policies. Watson never received any policies for the renewal coverage as promised by Holt. *Page 1135 
Upon receiving the policies and the bill, Watson telephoned Henry Fowlkes and stated that he was not going to pay Fowlkes Smith because he had paid for coverage through Holt.
Although Holt never obtained the "renewal" coverage for Watson, he never refunded the money to Watson or transferred Watson's payment to Fowlkes Smith.
Eventually, Watson returned the Auto-Owners policies to Fowlkes Smith, and Henry Fowlkes obtained a cancellation of the Watson policies. However, upon the cancellation, Fowlkes 
Smith was refunded only a portion of the payment it had advanced. By the time of the cancellation, Watson had already received the benefit of a shortened period of coverage under the Auto-Owners policies. The cancellation had the effect of Watson's receiving a lesser period of coverage than the period of the "renewal" promised by Holt. Also, although Watson never paid for the Auto-Owners coverage, it was considerably more expensive than the price Holt had promised "renewal" coverage for.
Henry Fowlkes had no knowledge of Watson's "renewal" payment to Holt prior to Watson's telephone call. Similarly, Watson did not know that Henry Fowlkes, Fowlkes Smith, or Auto-Owners was involved before he received the bill and the Auto-Owners policies in the mail. The record indicates that Watson thought that he was dealing exclusively with Holt and the insurance companies Holt's agency represented.
Watson sued Holt, Auto-Owners, and Fowlkes Smith, alleging that they had converted his payment to Holt of $2609 and that they had breached a contract with him by failing to secure insurance coverage on the terms Holt had promised.[1] Watson's claims against Fowlkes Smith and against Auto-Owners were based on the theory that Holt was their agent at the time of the events complained of. The trial court entered a summary judgment in favor of Auto-Owners, and the claims against Fowlkes Smith were subsequently dismissed on a joint motion of Fowlkes Smith and Watson. Watson appeals from the summary judgment in favor of Auto-Owners.
Watson correctly states that Auto-Owners conceded that Fowlkes Smith was its agent. He argues that because Holt was, he says, an agent of Fowlkes Smith (by virtue of Henry Fowlkes's agreement to "look after" some of Holt's "former" clients) Holt, too, was an agent of Auto-Owners. Therefore, he says, Auto-Owners is liable for Holt's actions in pocketing Watson's premium payment without providing the coverage Holt promised Watson.
It is important to recognize that Watson argues that an agency relationship between Holt and Auto-Owners was created and existed through Fowlkes Smith. He says that on one hand, Holt was an agent of Fowlkes Smith and that, on the other hand, Fowlkes Smith was an agent of Auto-Owners. This, he says, made Holt an agent of Auto-Owners.[2] Thus, based on Watson's argument, if Holt was not the agent of Fowlkes Smith he could not be the agent of Auto-Owners, because the purported agency link tying him to Auto-Owners would not exist. Therefore, we will first address the evidence as it relates to agency between Fowlkes Smith and Holt.[3]
We have stated that an agency relationship exists under the doctrine of respondeat superior where "the alleged principal reserved a right of control over the manner of the alleged agent's performance." Wood v. Shell Oil Co., 495 So.2d 1034,1036 (Ala. 1986). *Page 1136 
Watson argues that Fowlkes Smith "allowed" Holt to solicit Watson's business. The evidence does not indicate that.
To say that Fowlkes Smith "allowed" Holt to solicit Watson wrongly implies that Fowlkes Smith had some reserved right of control over Holt's actions. There is no evidence to suggest that Fowlkes Smith had any right of control over Holt. Also, with regard to a specific right of control over the solicitation, the record indicates that even if Henry Fowlkes would have liked a right of control over the solicitation, Holt, in effect, preempted any request for control; Holt asked Henry Fowlkes to take over preexisting commitments as if the solicitation had already occurred.
Watson also argues that by procuring Auto-Owners coverage for Watson, Henry Fowlkes had, for Fowlkes Smith, ratified Holt's actions. Watson argues that because of this ratification through its agent Fowlkes Smith, Auto-Owners was responsible for Holt's actions.
We find no evidence that Fowlkes Smith, through Henry Fowlkes, ratified Holt's acts; there is no evidence that Fowlkes Smith or Henry Fowlkes had any knowledge of Holt's acts that are the crux of this case, i.e., promising a renewal of existing coverage and accepting Watson's renewal payment, before the act that Watson says shows ratification, procuring the issuance of the Auto-Owners policies. The evidence indicates that Watson and Henry Fowlkes were both duped by Holt. Ratification by the alleged principal cannot be found where there is no evidence that he or she had any knowledge of the acts purportedly ratified. See Street v. Sinclair, 71 Ala. 110,116 (1881); Moman v. Gregerson's Foods, Inc.,570 So.2d 1215, 1216 (Ala. 1990). It is undisputed that Henry Fowlkes and Fowlkes Smith had no knowledge of Holt's promise of renewal coverage and his acceptance of a renewal premium payment before Henry Fowlkes obtained the Auto-Owners coverage, the act that Watson says was a ratification.
Watson also argues that Holt had apparent authority to act on behalf of Fowlkes Smith, and that from this apparent authority one can infer agency. However, as Wood emphasizes, before there can be apparent authority that implies an agency relationship, the "authority" must be "apparent" to the complaining party and that party must have relied on the appearance of authority; he cannot rely on an appearance of authority that he was ignorant of.
We have stated:
 " 'When one has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that an agency exists, and in good faith relies on such belief to his prejudice, the principal is estopped from denying such agency. * * *'
 " 'The apparent authority of the agent is the same, and is based upon the same elements as the authority created by the estoppel of the principal to deny the agent's authority. . . .' "
Wood, 495 So.2d at 1038 (citations omitted).
Watson testified that he had no knowledge of Fowlkes 
Smith's or Auto-Owner's involvement until he received the policies and the bill in the mail. In sum, by his own testimony, Watson conceded that he was not relying on any apparent authority of Holt's to act for Fowlkes Smith or Auto-Owners when Holt promised him renewal coverage and took his money.
However, Watson states that Henry Fowlkes used information about Watson, obtained from Holt, in obtaining the Auto-Owners coverage. Although it is unclear which theory of agency Watson would say this fact is relevant to, it is evident that this fact, without more, is not proof of the existence of any agency relationship. This fact does not alter the fact that Watson had no knowledge, at the operative time, of Fowlkes Smith's involvement, or the fact that Fowlkes Smith, at the operative time, had no knowledge of Holt's pertinent acts; this lack of knowledge negates any possible ratification or apparent authority. Also, the fact that Henry Fowlkes used information obtained from Holt in no way implies that Fowlkes Smith had a reserved *Page 1137 
right of "control over the manner of the alleged agent's performance." Wood, 495 So.2d at 1036.
Although we are sympathetic to the situation Watson found himself in, we are not persuaded by his arguments that Auto-Owners can, or should be, held liable for Holt's wrongdoing. Furthermore, while we recognize that a "[s]ummary judgment on the issue of agency is generally inappropriate because this issue is a question of fact to be determined by the trier of fact," Wood, 495 So.2d at 1035, we have also recognized that the party opposing a summary judgment motion supported by a prima facie showing that there was no agency relationship must, nonetheless, produce legally sufficient evidence of agency to rebut the movant's showing. See Wood,495 So.2d at 1035-36.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] Holt never answered the complaint and made no appearance in this case.
[2] Watson does not argue any direct relationship between Holt and Auto-Owners, nor would the record support such an argument.
[3] Because Watson's arguments fail on this point, we do not address whether the law would permit an imputed agency relationship between unassociated parties by showing that they have separate agency relationships with a common third party.