KENNEDY, Justice.
The plaintiff Evelyn Roberts appeals from a judgment based on a directed verdict in favor of the defendant, Blue Cross and Blue Shield of Alabama (“Blue Cross”), on Roberts’s claim alleging fraudulent suppression. Roberts argues that she presented substantial evidence creating a genuine issue of material fact on that claim; she argues, therefore, that the trial court erred in directing a verdict for Blue Cross.
In January 1991, Roberts had medical coverage under a policy with Blue Cross and under a policy with John Deere Insurance Company.[1] On January 16, 1991, Roberts’s physician, Dr. Lionel Naylor, examined Roberts and recommended in-patient surgery for an abdominal hernia. On two previous occasions, Dr. Naylor had performed in-patient surgeries on Roberts unrelated to the hernia.
Under the circumstances of Roberts’s proposed surgery and as a condition of Blue Cross’s payment of benefits, Roberts’s contract of insurance with Blue Cross required “pre-admission certification,” i.e., the payment of benefits was conditioned on Blue Cross’s pre-admission approval of the proposed surgery. Jewell Joiner, Dr. Naylor’s office manager, testified that after Dr. Nay-lor had examined Roberts on January 16 Joiner contacted Blue Cross by telephone about pre-admission certification for Roberts’s proposed surgery. Joiner testified that she spoke with someone named “Donna” at Blue Cross, who indicated that the Blue Cross computer was down, but who stated: “[I]f it’s an individual contract, go ahead and admit her.” R.T. 200. Joiner testified that *957 she knew that with the Blue Cross computer down, a Blue Cross representative could not actually know whether a policy was in force. R.T. 194. Also, it is undisputed that with the computer down Blue Cross could not issue Roberts a pre-admission certification number, a number that the parties suggest indicates completion of a pre-admission certification.
According to Joiner, “Donna” promised that Blue Cross would call back about the matter of a pre-admission certification number for Roberts. R.T. 186. Although Joiner noted on Roberts’s records that pre-admission certification had been made, she stated that she “flagged” Roberts’s file because the matter needed to be followed up on. R.T. 212. She testified that flagging the file “meant that somebody was going to call back [about pre-admission certification] or something needed to be done on it.” Id. Ultimately, no one at Blue Cross contacted Dr. Naylor’s office and Dr. Naylor’s office did not follow up on the certification before Roberts was admitted into a hospital on January 22, 1991. Roberts never obtained pre-admission certification.
Roberts testified that, before her admission, she knew that she needed pre-admission certification, R.T. 174, but she stated that she “didn’t give it a thought.” R.T. 173. She agreed that she “didn’t rely on anybody at [Blue Cross] to get precertification [sic]” for her, id., and testified that Joiner “had always done it.” R.T. 165. Roberts stated, also, that after her examination on January 16 she informed Joiner that she would need pre-admission certification for the proposed hernia surgery, and that Joiner had responded by saying that she had “already taken care of it.” Id. Roberts testified also, that she “believe[d]” that Joiner had contacted Blue Cross. Id.
As to the previous surgeries, Roberts had received pre-admission notification of Blue Cross’s decision on pre-admission certification. Roberts testified that she received no pre-admission notification from Blue Cross as to the proposed hernia surgery in issue, but that she made no efforts to contact Blue Cross. R.T. 171, 173-74.
Based on the lack of pre-admission certification, Blue Cross denied Roberts’s claim for benefits associated with her surgery. Roberts and her husband, Raymond Roberts, sued Blue Cross on theories of negligence and/or wantonness, breach of contract, fraudulent misrepresentation, fraudulent suppression, and bad faith refusal to pay. Before trial, Raymond Roberts dismissed his claims and Evelyn Roberts voluntarily dismissed her claim alleging negligence and/or wantonness and her claim alleging bad faith refusal to pay. Accordingly, the case proceeded to trial with Evelyn Roberts as the lone plaintiff and on claims alleging breach of contract, fraudulent misrepresentation, and fraudulent suppression.
At the close of Roberts’s case, the trial court, on Blue Cross’s motion, entered a directed verdict for Blue Cross on Roberts’s fraudulent suppression claim. On Roberts’s two remaining claims, alleging breach of contract and fraudulent misrepresentation, the jury returned a verdict in favor of Blue Cross. The trial court entered a judgment for Blue Cross, based on the directed verdict on the one claim and the jury’s verdict on the other two. Evelyn Roberts appeals from that portion of the judgment based on the directed verdict in favor of Blue Cross on the fraudulent suppression claim.
Alabama Code 1975, § 12-21-12 provides: “[Substantial evidence shall be required to submit an issue of fact to the trier of the facts. Proof by substantial evidence shall be required for purposes of testing the sufficiency of the evidence to support an issue of fact in rulings by the court [on] motions for directed verdict.” Interpreting § 12-21-12, this Court has written: “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989).
Our review of a trial court’s ruling on a motion for a directed verdict is de novo, Smith v. U.S. Const. Co., 602 So.2d 349, 350 (Ala.1992), and on such a review we must view the evidence in a light most favorable to the nonmoving party. King Mines Resort, *958 Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714 (Ala.1987). As to a claim of fraudulent concealment or “suppression,” in Soniat v. Johnson-Rast & Hays, 626 So.2d 1256, 1258-59(Ala.1993), we stated:
“In order to establish fraudulent concealment, a plaintiff must show (1) that the defendant had a duty to disclose a material fact; (2) that the defendant either failed to disclose or concealed the material fact; (3) that the defendant’s failure to disclose or his concealment of that fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered damage as a result of his action, or inaction, induced by the defendant’s failure to disclose or his concealment of the material fact.”
As to the third element of fraudulent suppression, “that the defendant’s failure to disclose or his concealment of that fact induced the plaintiff to act or to refrain from acting,” we observe that there is a complete lack of evidence that anything Blue Cross did or did not do induced Roberts to act. Roberts testified that she relied on Dr. Naylor’s office to obtain pre-admission certification, R.T. 170,[2] and that Joiner had “always done it.” R.T. 165. As to Roberts’s pre-admission certification for the surgery in issue, Roberts indicated that Joiner assured her that Joiner had “already taken care of it.”[3]
Roberts argues, however, that Joiner was the “agent” of Blue Cross. Roberts states that Joiner had received Blue Cross training on pre-admission certifications and that Blue Cross pre-admission certifications are handled through “physicians’ offices,” which are given a toll-free telephone number to use in contacting Blue Cross to obtain pre-admission certifications. Roberts states also that the evidence showed that the contract of insurance between Roberts and Blue Cross provided that “the insured and the insured’s physician must complete pre-admission certification.”
In Watson v. Auto-Owners Ins. Co., 599 So.2d 1133, 1135 (Ala.1992), we stated that “an agency relationship exists under the doctrine of respondeat superior where ‘the alleged principal reserved a right of control over the manner of the alleged agent’s performance,’ ” quoting Wood v. Shell Oil Co, 495 So.2d 1034, 1036 (Ala.1986).
None of the matters argued by Roberts as showing agency indicates that Blue Cross “reserved a right of control over the manner” of Joiner’s performance. As to Joiner’s Blue Cross training, Roberts says simply that agency is shown by Joiner’s testimony “that she had been trained by [Blue Cross] to handle precertification” and that “Joiner attended training seminars and meetings with Blue Cross personnel, including Blue Cross seminars on precertification.” Clearly, these contentions fail to demonstrate any right of control over the manner of Joiner’s performance. Further, with the exception of the fact that Joiner had some Blue Cross training, it is unclear, from what is before us, how — and if — any of the other matters referred to would apply to show control exerted by Blue Cross over Joiner, e.g., Roberts’s contention that the insured and the insured’s physician must complete the pre-admission certification forms.
Based on the foregoing, we must conclude that Roberts failed to present legally adequate (i.e., “substantial”) evidence as to a critical element of her claim of fraudulent *959 suppression. The trial court properly directed a verdict for Blue Cross on that claim.
AFFIRMED.
ALMON, HOUSTON, INGRAM and COOK, JJ., concur.

. John Deere was Roberts's "primaiy” insurer.

. Roberts was asked, "[Y]ou have always relied on someone else to get the pre-admission certification for you ...?" Roberts responded, "yes.” Roberts then agreed that “the doctor's office was the entity that always got it for [her].”

. Roberts points also to certain post-admission contacts with Blue Cross through the hospital that admitted her. There is no evidence that as to any of those contacts, Blue Cross was ever advised that Roberts had been admitted. However, assuming arguendo, that these contacts were relevant to the issues in this case, they would not alter the unrefuted evidence that suggests that Roberts was induced to act by Joiner. Further, this fact makes it unnecessary for us to consider whether, as argued by Roberts, the hospital was an agent of Blue Cross.
Also, we observe that in directing the verdict, the trial court emphasized that, in its view, Blue Cross, as a matter of law, had no duty to inform Roberts that she did not have pre-admission certification, a matter relating to the first element of fraudulent suppression. Because the directed verdict would have been proper on another ground — a lack of evidence as to the third element of fraudulent suppression — we do not address this question.