The plaintiff, E.L. Pleasant, sued Rodney Warrick, John Deere Industrial Equipment Company, and Deere Credit Services, Inc. ("Deere Credit"), for conversion, negligence, and wantonness for destruction of a logging skidder, which he contends had been wrongfully repossessed. All of the defendants filed timely motions for summary *Page 215 
judgment supported by affidavits and deposition excerpts, contending that Pleasant was in default at the time of the repossession and that the logging skidder had been lawfully repossessed. The trial court entered summary judgment for the defendants.
The dispositive issue on appeal is whether the trial court erred in granting the defendants' motions for summary judgment.
The record, in pertinent part, reveals the following: Pleasant, a timber subcontractor, purchased a John Deere 440C logging skidder from Warrior Tractor and Equipment Company, Inc., an independent John Deere dealer. Pleasant traded a used John Deere 440B skidder and received a credit of $7,117.21 against the total purchase price of $25,268.24, leaving a balance due of $18,151.03. The skidder was used as collateral for a security agreement relating to the $18,151.03 balance. Pleasant agreed to make 36 consecutive monthly payments of $721.66 each. The security agreement was transferred or assigned to defendant Deere Credit for administration and collection.
The security agreement, which was signed by Pleasant, contained the following pertinent language:
 "This contract shall be in default if I (we) shall fail to pay any installment when due. . . . In any such event Lender may take possession of any Goods in which Lender has a Security Interest and exercise any other remedies provided by law, and may immediately and without notice declare the entire balance of this contract due and payable. . . .
 ". . . Waiver or condonation of any breach or default shall not constitute a waiver of any other or subsequent breach or default."
The evidence is not in dispute that Pleasant was behind with his payments almost from the beginning. In fact, Pleasant admitted that his account was in default and that Deere Credit had sent him pastdue notices of his default. At the time of repossession, which was only 20 months after Pleasant had purchased the skidder, Pleasant was approximately 6 months past due in making the payments pursuant to the security agreement. The record shows that Deere Credit, through its agent, Rodney Warrick, made every reasonable effort toward working out Pleasant's default in order to bring his account current. There was evidence, although disputed, that, instead of a full payment every 30 days, Pleasant was permitted to make partial payments at more frequent intervals. Pleasant contends that this constituted a modification of the original agreement and that, therefore, there was no default. Although we find that Deere Credit may have tried to accommodate Pleasant in an effort to bring Pleasant's account current, we do not find that this accommodation constituted a modification. Nevertheless, even if we concluded that there was a modification, Pleasant admitted that he did not make all of the partial payments. Further, the record reveals that two of the partial payments were made with checks that were dishonored for insufficient funds. The record does not reveal that Pleasant brought his account current at any time.
The record further reveals that on September 1, 1989, Warrick met with Pleasant concerning his account, which was then over $4,000 past due. Warrick had spoken with Pleasant's wife the previous night and had told her that he was coming to see Pleasant about his past-due account. Warrick testified that he obtained directions to the skidder and that he then drove to its location and verified its identity. Pleasant testified that Warrick did not tell him that he was going to repossess the skidder, only that he was going to check the condition of it, and that he would then come to Pleasant's home later that afternoon to get some money Pleasant would have for him.
When Warrick found the skidder, he testified that he attempted to obtain a truck to haul the skidder. When no truck was available, Warrick asked for and received permission to park the skidder at a local dealership over the weekend. When Warrick returned to the skidder, he testified that he checked the oil, the water in the radiator, and the fuel. He then repossessed the skidder; he started its engine *Page 216 
and drove it down the highway toward the dealership where he would leave it. No one else was present when he drove the skidder away.
On his way to the dealership, the unexpected occurred. Warrick testified that he heard the engine backfire and saw steam coming from the engine. Assuming that the skidder had simply overheated, he parked the skidder, locked the brakes, and removed the ignition key. He walked back to his vehicle, and as he drove past the skidder, he saw smoke and found the skidder to be on fire. He testified that he believed the fire was beyond his control, so he called the fire department.
The origin of the fire is unknown, and Pleasant did not introduce any evidence concerning the cause of the fire. The investigation report from the fire department lists the cause as "unknown." Warrick testified that the skidder was steaming, but that it was not on fire, when he parked it to return to his car.
Warrick reported the fire loss to the insurance company, and Pleasant filed an insurance claim and proof-of-loss statement. The claim was approved, and proceeds from the insurance policy were forwarded to Deere Credit. Deere Credit retained the amount equal to Pleasant's debt ($13,589.51) and forwarded a check for the balance of $3,598.26 to Pleasant, which Pleasant cashed.
In reviewing a summary judgment, this Court uses the same standard as that of the trial court to test the sufficiency of the evidence. Collins v. Gulf Furniture Stores, Inc.,549 So.2d 6 (Ala. 1989). The party moving for a summary judgment must make a prima facia showing that there is no genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). The burden then shifts to the nonmoving party to show by substantial evidence the existence of a genuine issue of material fact. Flanagan v. World OmniFinancial Corp., 539 So.2d 248 (Ala. 1989).
The applicable law regarding secured transactions and repossessions is well settled in Alabama. Ala. Code 1975, § 7-9-503, provides:
 "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace. . . ."
This section allows the secured party, after default, to take possession of collateral without judicial process if possession can be accomplished without risk of injury to the secured party or to any innocent bystanders. General Finance Corp. v. Smith,505 So.2d 1045 (Ala. 1987). The secured party may repossess collateral at his own convenience and is not required to make a demand for possession or have the debtor's consent prior to taking possession. Collins, supra.
Here, we find the evidence to be undisputed that Pleasant was in default on his account. The record is clear that his payment history over the 20-month period prior to the repossession was irregular and that his account was never brought up to date. The record is undisputed that Pleasant failed to meet his regular payment schedule, failed to make promised payments on his arrearage, and remitted checks that were not honored because of insufficient funds. The record is further undisputed that at the time of repossession, Pleasant's account was over $4,000 in arrears. Indeed, the record is clear that Pleasant was in default and that pursuant to § 7-9-503, the defendants were entitled to take possession of the skidder.
The record is also undisputed that the defendants did not commit any breach of peace in obtaining the skidder. There was no evidence of any actual or constructive force used when the skidder was repossessed. In fact, no one other than Warrick was present when the repossession took place. Nor do we find that Warrick repossessed the skidder through fraud or trickery. SeeFord Motor Credit Co. v. Byrd, 351 So.2d 557 (Ala. 1977). Pleasant contends that Warrick "tricked" him into informing Warrick of the location of the skidder. However, in view of the payment *Page 217 
history of this case, we do not agree. Pleasant was well aware of his $4,000 arrearage, as well as the fact that there was a strong possibility that the skidder would be repossessed.
In view of the above, Warrick's repossession of the skidder was lawful; i.e., Pleasant was in default and no breach of the peace occurred while taking possession of the collateral. Therefore, we find that Pleasant's claims of conversion, negligence, and wantonness are without merit. SeeFlanagan, supra.
The judgment in this case is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.