**Debra RUFFIN, Plaintiff,**

v.

**NISSAN MOTOR ACCEPTANCE CORPORATION, Defendant.**

Civil Action No. 95–D–1295–S.

United States District Court,
M.D. Alabama,
Southern Division.

July 17, 1996.

W. Terry Bullard, Dothan, AL, for plaintiff.

John M. Peek; Gary L. Weaver; Andalusia, AL, Royce A. Ray, III, Mobile, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant Nissan Motor Acceptance Corporation's ("NMAC") motion for summary judgment filed April 30, 1996. The plaintiff failed to respond in opposition. After careful consideration of the relevant case law and the record as a whole, the court finds that the defendant's motion is due to be granted.

## JURISDICTION

This court has subject-matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332, as there exists complete diversity between the parties and the amount in controversy exceeds $50,000. Personal jurisdiction and venue are uncontested.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## FINDINGS OF FACT

On June 1, 1995, the plaintiff purchased a 1993 Infiniti G–20, vehicle identification number JNKCP01P4PT407220, from Dothan Nissan, Inc. through a Retail Installment Sale Contract ("contract"). Thereafter, the contract was assigned for valuable consideration to Nissan Motor Acceptance Corporation. Aff. of Todd Lightfoot.

Under the terms of the plaintiff's contract with NMAC, the plaintiff agreed and was required to pay NMAC $397.45 each month for 72 consecutive months beginning on July 16, 1995. The plaintiff also granted NMAC a security interest in the vehicle, which NMAC properly perfected by placing a lien on the Alabama Certificate of Title. Aff. of Todd Lightfoot. The plaintiff's contract with NMAC further provided that NMAC had the right to repossess the vehicle if the plaintiff defaulted for non-payment of her monthly installments:

> **F. DEFAULT:** If you default in the performance of any of your obligations under this contract, including, but not limited to, the failure to make any payment when due, or if we in good faith believe that the prospect of payment or performance is impaired, we may at our option (subject to compliance with notice and other requirements of applicable law then prevailing, if any) declare the entire unpaid balance of this contract (net of any unearned Finance Charge) immediately due and payable in full, and you waive notice of our intention

to do so. If you fail to pay any amount when due, or when declared due under this section F, or fail to comply with any of your other obligations under this contract, we will have, in addition to our other lawful rights and remedies, all rights and remedies of a secured party under the law, including, but not limited to, the right, so long as we do not breach the peace, to take possession of the vehicle (and parts and accessories which now or hereinafter constitute accessions to the vehicle) and, after giving notice as required by law, to sell the vehicle, unless you redeem it before sale in accordance with the law.

Exh. A attach. to Aff. of Todd Lightfoot.

On August 31, 1995, the vehicle was repossessed by Joiner's Recovery Service. On the day of the repossession, the plaintiff was in default under the terms of her contract with NMAC. Specifically, the plaintiff failed to pay the August 16, 1995 installment. Aff. of Todd Lightfoot.

## DISCUSSION

### I. Count III—Wrongful Repossession

Because the main thrust of the plaintiff's complaint is the alleged wrongful possession of her vehicle, the court will address Count III first, which alleges that NMAC wrongfully repossessed the plaintiff's Nissan Infiniti vehicle. Pl.'s Compl. at 2. NMAC contends that it is clearly entitled to summary judgment on this wrongful repossession theory.

■ Alabama law is well settled that a secured party such as NMAC has upon the debtor's default, the right to "self-help" repossess its collateral as long as the repossession can be accomplished without a breach of the peace. Ala.Code § 7-9-503; *Williamson v. Nissan Motor Acceptance Corp.*, 631 So.2d 241, 242 (Ala.1993); *Davis v. Ford Motor Credit Co.*, 599 So.2d 1123, 1124-26 (Ala. 1992); *Pleasant v. Warrick*, 590 So.2d 214, 216-17 (Ala.1991); *Jackson v. General Motors Acceptance Corp.*, 549 So.2d 38, 39-40 (Ala.), *cert. denied*, 493 U.S. 996, 110 S.Ct. 549, 107 L.Ed.2d 545 (1989); *Flanagan v. World Omni Financial Corp.*, 539 So.2d 248, 250-51 (Ala.1989). In *Pleasant*, the Supreme Court of Alabama summarized the long established principles of wrongful repossession as follows:

The applicable law regarding secured transactions and repossessions is well settled in Alabama. Ala.Code 1975, Section 7-9-503, provides:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace...."

This section allows the secured party, after default, to take possession of collateral without judicial process if possession can be accomplished without risk of injury to the secured party or to any innocent bystanders. *General Finance Corp. v. Smith*, 505 So.2d 1045 (Ala.1987). The secured party may repossess collateral at his own convenience and is not required to make a demand for possession or have the debtor's consent prior to taking possession. [*Collins v. Gulf Furniture Stores, Inc.*, 549 So.2d 6 (Ala.1989)].

590 So.2d at 216. In addition, a secured party is not required to give notice to the debtor prior to repossession. Ala.Code § 7-9-503; *Flanagan v. World Omni Financial Corp.*, 539 So.2d 248, 252 (Ala.1989); *Johnson v. Central Bank of the South*, 514 So.2d 969, 969-70 (Ala.1987); *Hale v. Ford Motor Credit Co.*, 374 So.2d 849, 853 (Ala.1979).

■ Here, the plaintiff does not claim that there was any "breach of the peace" during the repossession. *See* NMAC's Request for Admission No. 8 & Pl.'s Response. In fact, the evidence reveals that the plaintiff was not even present during the repossession. Debra Ruffin Dep. at 11. In addition, it is undisputed that the plaintiff was in default under her contract with NMAC on the day of the repossession. Specifically, the plaintiff failed to pay the August 16, 1995 installment. Accordingly, the court finds that NMAC's motion for summary judgment is due to be granted on the plaintiff's wrongful possession theory.

### II. Counts I and II—Breach of Contract and Conversion

■ In Count I, the plaintiff seeks to recover under a breach of contract claim. In

order for the plaintiff to recover on said claim, she must present evidence that a contract was breached. Here, the plaintiff has failed to present any evidence that NMAC breached its contract with her. In fact, after reviewing all the evidence before the court, the court can find no evidence even inferring that NMAC breached its contract with the plaintiff. Accordingly, because there is no evidence that NMAC breached its contract with the plaintiff, the court finds that NMAC is entitled to summary judgment on the plaintiff's breach of contract theory.

 Regarding Count II, conversion requires proof of " 'a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse.' " *Flanagan v. World Omni Financial Corp.,* 539 So.2d 248, 250 (Ala.1989). It is undisputed that NMAC acted within its contractual and statutory right to repossess the vehicle upon the plaintiff's default. As such, the court finds that there was no conversion. Accordingly, the court finds that NMAC's motion for summary judgment is due to be granted concerning the plaintiff's claim for conversion.

### III. Count IV—Fraud

 The plaintiff alleges in Count IV that NMAC falsely promised the plaintiff that NMAC would finance the automobile. After carefully reviewing this claim, the court finds that the plaintiff's fraud theory is simply the wrongful possession, breach of contract and conversion theories pleaded with "fraud" language. Therefore, the court finds that the fraud claim fails for the same reasons that the other claims fail.

Moreover, the plaintiff has not produced any evidence of false representations made by NMAC. In fact, the evidence reveals that the plaintiff never had any conversations with anyone from NMAC on the day that she purchased the vehicle:

Q. All right. Now, just so we're straight, I know that we're going to get into conversations you say occurred later on down the road. But at the time all the paperwork was being done at the dealership, you didn't have any conversations with Nissan, did you? I'm not talking about the dealership people. At the time all this paperwork was being done, when you bought the car, you didn't have any conversations with anybody at Nissan, did you?

A. No, sir.

Debra Ruffin Dep. at 25. Furthermore, the evidence in the record conclusively establishes that NMAC did indeed finance the plaintiff's purchase of the vehicle. *See* Aff. of Todd Lightfoot.

In addition, the evidence reveals that the plaintiff understood that she was the one responsible for making payments on the vehicle, and that if she did not make the payments, NMAC could repossess the vehicle. For instance, the plaintiff testified in her deposition as follows:

Q. All right. Now, at the time you bought the Infinity, you understood that you were going to be responsible for making the payments, didn't you?

A. Yes, sir.

Q. All right. And you also understood that your payments were going to be $397.45 a month?

A. Yes, sir.

Q. And you also understood that those payments were due on consecutive months, beginning on or before July 16, 1995?

A. Yes, sir.

Q. All right. You also knew that if you didn't make your payments, that the creditor would have the right to—in this case, the creditor being Nissan— would have the right to repossess the vehicle?

A. Yes, sir.

Q. You understood that when you entered into this contract?

A. Yes, sir.

Debra Ruffin Dep. at 23–24; *see also id.* at 29. Based on the foregoing undisputed evidence, the court finds that NMAC is entitled to summary judgment on the plaintiff's fraud claim.

## IV. NMAC's Counterclaim

### A. Deficiency Amount

 NMAC has counterclaimed against the plaintiff for failure to pay a deficiency balance under the terms of her Retail Sale Installment Contract. Because this counterclaim is an action to enforce the provisions of a contract, the court looks to the language of the contract itself. The Retail Installment Sale Contract clearly gives NMAC, as the creditor, a security interest in the vehicle. Furthermore, the Retail Installment Sale Contract gives NMAC the authority to repossess the vehicle for failure to pay and, moreover, gives NMAC the right to sell the repossessed vehicle provided certain notice requirements are satisfied. Based on the foregoing, NMAC clearly had the authority to repossess and sale the vehicle if the plaintiff defaulted in her payments and was given proper notice of the potential sale of the vehicle.

The evidence reveals that the plaintiff was informed by NMAC by letter dated September 1, 1995, that, in accordance with the terms of her contract with NMAC, the Infiniti vehicle had been repossessed. In said letter, the plaintiff was also informed that the vehicle would be sold at a private sale any time after September 11, 1995. Under the terms of the plaintiff's contract with NMAC, the entire outstanding indebtedness was accelerated and had become immediately due and payable to NMAC as a result of the plaintiff's default. The plaintiff was further informed that in order to redeem the vehicle, she would have to pay NMAC $18,622.86 prior to the sale. It is undisputed that the plaintiff never paid this amount to NMAC. *See* Aff. of Todd Lightfoot.

Moreover, it is undisputed that on December 13, 1995, in accordance with the terms of the contract, NMAC caused the vehicle to be sold in accordance with the Alabama Uniform Commercial Code to the highest and best bid. *Id.* It is also undisputed that the price received, $10,500.00, constituted the fair and reasonable market value of the vehicle at the time of the sale. *Id.* Finally, the plaintiff was also informed by NMAC by letter dated December 27, 1995, that the vehicle had been sold and that a deficiency of $7,510.03 re-mained due and owing to NMAC after the net proceeds of the sale were applied to offset the plaintiff's account.

Based on the foregoing undisputed facts, the court finds that, pursuant to Alabama law and the plaintiff's contract with NMAC, the plaintiff owes the $7,510.03 deficiency to NMAC. *See* Ala.Code § 7–9–504(2) ("If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency."); *see also* exh. A at § F attach. to Aff. of Todd Lightfoot ("If a balance still remains owing you will pay it."). Therefore, NMAC is entitled to summary judgment on its counterclaim seeking the deficiency amount owed by the plaintiff.

### B. Prejudgment Interest

 The court further finds that NMAC is entitled to prejudgment interest on the deficiency amount. *See Miller & Company, Inc. v. McCown,* 531 So.2d 888, 889 (Ala.1988) (noting that under Ala.Code § 8–8–8, " 'in contract cases, where an amount is certain or can be made certain as to damages at the time of breach, the amount may be increased by the addition of legal interest from that time until recovery' ") (citations omitted). The legal rate of prejudgment interest is 6 percent per annum. *Burgess Mining & Construction Corp. v. Lees,* 440 So.2d 321, 338 (Ala.1983). Thus, the court finds that NMAC is entitled to 6 percent of interest on $7,510.03 from December 27, 1995 (the date the plaintiff was informed of the deficiency), to the date judgment is entered in NMAC's favor. The total prejudgment interest accrued as of June 27, 1996, is $225.30 ($7,510.03 × .06 = $450.06 per year / 12 months = $37.55 per month; $37.55 × 6 months (12/27/95 to 6/27/96) = $225.30).

### CONCLUSION

In accordance with the foregoing discussion and analysis, the court finds that NMAC is entitled to summary judgment on all claims asserted against NMAC in the complaint. The court further finds that NMAC is entitled to a judgment against the plaintiff

on NMAC's counterclaim in the total amount of $7,735.33, composed of the following: $7,510.03 (deficiency) and $225.30 (prejudgment interest through 6/27/96). A judgment in accordance with this memorandum opinion will be entered separately.