821 So.2d 968 (2001)
Kenneth G. THRASH and Kathryn Thrash
v.
CREDIT ACCEPTANCE CORPORATION.
1992335.
Supreme Court of Alabama.
November 16, 2001.
*970 Desmond V. Tobias of Windom & Tobias, L.L.C., Mobile; and Banks C. Ladd, Mobile, for appellants.
G. Thomas Yearout and Robert B. Stewart of Duell, Yearout & Spina, P.C., Birmingham, for appellee.
WOODALL, Justice.
The plaintiffs, Kenneth Thrash and Kathryn Thrash, appeal from a summary judgment in favor of a defendant, Credit Acceptance Corporation ("CAC"). We reverse and remand.

I.
On or about December 2, 1996, the Thrashes entered into a retail-installment contract and security agreement with CAC in connection with their purchase of a used automobile. The agreement required the Thrashes to make monthly payments, on a loan beginning on January 1, 1997, and the loan was secured by the 1989 Oldsmobile Cutlass Ciera automobile they purchased.
The agreement provided, in pertinent part:
"Remedies .... if you are in default on this Contract, we have all of the remedies provided by law and this Contract:
". . . .
"D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises...."
(Emphasis added.)
The Thrashes made the payments required by the agreement on January 11, 1997, and on February 20, 1997, but made no payment in March or April. The Thrashes testified that CAC had agreed to allow the March and April payments to be made by the end of April.
CAC employed Gulf Coast Recovery Services & Storage, Inc. ("GCRS"), to repossess the Thrashes' automobile. During the early-morning hours of April 24, 1997, GCRS removed the automobile from the Thrashes' residence. GCRS did not contact the Thrashes before the repossession. Finding the automobile parked under a carport in a driveway, GCRS attached a winch to the rear of the vehicle to drag it to the street. Because the front wheels were locked, GCRS poured liquid dish-washing soap on the driveway, lubricating the driveway and making it easier to drag the vehicle to the street, where it could be towed from its front. GCRS did not tell anyone that it had placed the lubricant on the driveway.
When the vehicle was being repossessed, Kenneth Thrash was at work. Kathryn, *971 his wife, telephoned him from their residence, and informed him that the vehicle was being stolen. Kenneth told Kathryn to telephone the police, and he left work to return to their residence. When he arrived at their residence, Kenneth parked his vehicle in the driveway, got out of the vehicle, and ran toward the back door. In the carport, he stepped in the slippery dish-washing liquid and fell, allegedly suffering severe and disabling injuries.

II.
The Thrashes sued CAC and GCRS in the Mobile Circuit Court. Their complaint alleged that CAC and GCRS were negligent or wanton in leaving a clear liquid lubricant on the floor of their carport, allegedly causing Kenneth to slip and fall, injuring his back. They further alleged that CAC and GCRS's actions constituted a wrongful repossession and a trespass upon their real property and violated § 7-9-503, Ala.Code 1975.
CAC moved for a summary judgment, contending that it could not be vicariously liable for the alleged wrongdoing of GCRS, an independent contractor. Further, CAC argued that GCRS had not committed a breach of the peace for which CAC would be liable. The trial court entered a summary judgment in favor of CAC.
The case against GCRS proceeded to a jury trial. The Thrashes received a judgment in their favor, and later reached a pro tanto settlement with GCRS. The Thrashes appeal from the summary judgment in favor of CAC.

III.
CAC made a prima facie showing in support of its motion for a summary judgment that GCRS was an independent contractor and that in repossessing the vehicle GCRS had not committed a breach of the peace. Therefore, the burden shifted to the Thrashes to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989); § 12-21-12(d), Ala.Code 1975. Evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). This Court must review the record in a light most favorable to the Thrashes, and must resolve all reasonable doubts against CAC. Martin v. City of Linden, 667 So.2d 732, 736 (Ala.1995).
Applying these well-established principles, this Court must resolve two dispositive issues. First, did the Thrashes present substantial evidence that GCRS was acting as CAC's agent, and not as an independent contractor? Second, did the Thrashes present substantial evidence that in repossessing the vehicle GCRS committed a breach of the peace or an unlawful entry onto their premises? If both questions are answered in the affirmative, then the trial court erred in entering the summary judgment for CAC on all counts of the complaint.[1]

IV.
The Thrashes contend that GCRS was acting as CAC's agent in repossessing the automobile, and that, therefore, CAC is vicariously liable for GCRS's wrongdoing. This Court stated the controlling principles of agency law in Malmberg v. American Honda Motor Co., Inc., 644 So.2d 888, 890 (Ala.1994):

*972 "Agency is generally a question of fact to be determined by the trier of fact. See Oliver v. Taylor, 394 So.2d 945 (Ala. 1981). When a defendant's liability is to be based on agency, agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency. Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921 (Ala. 1988); Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986). The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent's performance. Control must be proven; and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the requirements of a contract. Id."
(Emphasis added.) The right-of-control test requires that the right be reserved, not that the right be actually exercised.
"The test for determining whether a person is an agent or employee of another, rather than an independent contractor with that other person, is whether that other person has reserved the right of control over the means and method by which the person's work will be performed, whether or not the right of control is actually exercised. Alabama Power Co. v. Beam, 472 So.2d 619 (Ala.1985). How the parties characterize the relationship is of no consequence; it is the facts of the relationship that control."
Martin v. Goodies Distribution, 695 So.2d 1175, 1177 (Ala.1997).
The Thrashes contend that they presented substantial evidence indicating that CAC had reserved the right of control over the manner in which GCRS repossessed their automobile. We agree.
Terry McMillen, a representative of GCRS, testified by deposition that GCRS preferred to contact the debtor before repossessing a vehicle. However, CAC had instructed GCRS to make no contact with the debtor before a repossession, thus evidencing the actual exercise of a right of control over the manner of GCRS's performance. Following that instruction, GCRS did not advise the Thrashes that the vehicle was being repossessed. Consequently, Kathryn Thrash concluded that the vehicle was being stolen, and she so informed her husband.
There is evidence indicating that Kenneth Thrash fell when he stepped in slippery dish-washing liquid, which GCRS had used to lubricate the driveway and to facilitate the repossession. Randy Smirnoff, a representative of CAC, testified by deposition that once CAC learned that GCRS was using a lubricant, CAC had the authority to instruct GCRS to abandon its use, thus evidencing CAC's retained right of control over the manner of GCRS's performance.

V.
A creditor has a nondelegable duty to avoid a breach of the peace when repossessing a vehicle. General Fin. Corp. v. Smith, 505 So.2d 1045 (Ala.1987). In its retail-installment contract and security agreement with the Thrashes, CAC assumed another nondelegable dutythe duty to avoid an unlawful entry onto the Thrashes' premises during the repossession of the automobile. The Thrashes contend that they presented substantial evidence indicating that GCRS committed a breach of the peace and that GCRS entered their premises unlawfully when it repossessed their automobile. We agree.
*973 It is unlawful for a repossession to be accomplished in a manner that creates a substantial risk of injury to the secured parties or to any innocent bystanders.
"The applicable law regarding secured transactions and repossessions is well settled in Alabama. Ala.Code 1975, § 7-9-503, provides:
"`Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace....'
"This section allows the secured party, after default, to take possession of collateral without judicial process if possession can be accomplished without risk of injury to the secured party or to any innocent bystanders. General Finance Corp. v. Smith, 505 So.2d 1045 (Ala. 1987)."
Pleasant v. Warrick, 590 So.2d 214, 216 (Ala.1991) (emphasis added). The Thrashes offered substantial evidence indicating that GCRS created a hazard that posed a substantial risk of injury to them, when GCRS entered their premises under cover of darkness, poured a slippery substance onto the driveway, and then left the premises without removing the substance or warning the Thrashes of its presence.
The same evidence would also be sufficient to support a conclusion that GCRS had unlawfully entered onto the Thrashes' premises. One can be liable to another for trespass where "the person.... intentionally cause[s] some `substance' or `thing' to enter upon another's land." Born v. Exxon Corp., 388 So.2d 933, 934 (Ala.1980). The party who has a legal right to enter the land of another for a particular purpose becomes a trespasser when the party does some act that he has no legal right to do. See, e.g., Dixie Constr. Co. v. McCauley, 211 Ala. 683, 101 So. 601 (1924).

VI.
The trial court erred in entering the summary judgment for CAC. Therefore, the summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs specially.
MOORE, C.J., concurs in part and dissents in part.
JOHNSTONE, Justice (concurring specially).
I concur. I add some observations of my own.
In the proceedings on the motion for summary judgment filed by CAC, the Thrashes, as the nonmovants, are entitled to the benefit of the versions of the evidence and the reasonable inferences from the evidence most favorable to their claims. Ex parte Kraatz, 775 So.2d 801 (Ala.2000), and System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996). I will summarize some critical facts supported by the record so considered.
In the contracts with the Thrashes, CAC promised them it would not commit a trespass or a breach of the peace in repossessing the car. After the Thrashes defaulted in their car payments, CAC notified them that it intended to repossess the vehicle. In a subsequent telephone discussion with Mr. Thrash, however, CAC agreed to allow him until the end of April to make the delinquent payments.
Nonetheless, about a week before the end of April, CAC sent the repossession *974 agent GCRS to repossess the Thrashes' car. Unannounced, in the middle of the night, GCRS entered the Thrashes' premises and poured detergent under the front tires of the car in the carport and dragged the car away, but left the detergent. Matthew C. McBride, the next-door neighbor of the Thrashes, swore in an affidavit, in pertinent part:
"At some point at approximately midnight on April 24, 1997, I heard a loud screeching noise coming from the Thrash[es'] home which sounded like a chainsaw engine. At the time I heard this I was standing out on my carport smoking a cigarette. Upon hearing the noise, I walked towards the front of my home where I could view the front yard of the Thrash[es'] home. At this time I saw a pickup truck with a boom dragging a vehicle from the Thrash[es'] carport via some type of a winch which was on the boom. There was also an old model vehicle that looked like a Camaro with two men in it parked in the front of the Thrash[es'] home on Colonial Oaks Drive. The front end of the vehicle which was being dragged was pointing towards the Thrash[es'] carport. The pickup truck with the boom was backed into the drive and its front end faced the street. As the vehicle was being dragged down the Thrash[es'] driveway, it made a screeching sound because the front tires were locked and were not rolling as the car moved along the driveway.
"I saw the pickup truck with the Thrash[es'] vehicle hooked to it take a left out of the Thrash[es'] driveway and go down the street and take a left. The older model car followed the pickup truck. At some point I saw the pickup truck drop the Thrash[es'] vehicle then turn[ ] around to pick it up from the front end so that the Thrash[es'] vehicle had only the rear wheels on the ground. The pickup truck with the Thrash[es'] vehicle and the older car then proceeded back up Colonial Oaks Drive which required them to go past the Thrash[es'] home. At some point prior to this, I had moved into an area approximately in the front yard of the Thrash[es'] home and as the pickup truck drove by, I saw at least one man in the truck and several men in the older car. One of the men in the car yelled in a loud voice, `Hey, there he is. Let's get him.' Another of the persons in the older car stated, `No, that's not him.' At this point I became concerned from the words and actions of the persons involved in towing away the Thrash[es'] vehicle that they were going to get out and start a confrontation or fight or otherwise inflict physical damage upon me as I stood in the Thrash[es'] yard." (Emphasis added.)
Mrs. Thrash, awakened by McBride, called Mr. Thrash at his night-time job and told him the car had been stolen. Mr. Thrash rushed home and into his carport, where he suffered serious injury from slipping in the detergent.
The standing instructions of CAC to GCRS included the requirement that GCRS repossess each target vehicle "on sight," without any announcement to the debtor, even though the practice GCRS preferred was to knock on the debtor's door to tell the debtor that GCRS was about to repossess the collateral. Randy Smirnoff of CAC as much as admitted that using detergent to accomplish a repossession would constitute a breach of the peace. (C. 229, 232-33.)
By law and by contract with the Thrashes, CAC owed them a nondelegable duty not to commit trespass and not to injure them or to breach the peace in effecting a repossession. (C. 154.) § 7-9-503, Ala. Code 1975, and General Finance Corp. v. *975 Smith, 505 So.2d 1045 (Ala.1987). Thus, CAC is liable for any trespass, injury, or breach of peace committed by GCRS in accomplishing CAC's repossession, even if GCRS be deemed an independent contractor. General Finance Corp., 505 So.2d at 1048 ("`One who by statute or administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.'" (quoting Restatement (Second) of Torts § 424 (1965))). See also Singer Sewing Mach. Co. v. Hayes, 22 Ala.App. 250, 114 So. 420 (1927). A repossession accomplished by a method likely to injure the debtor is, in and of itself, a breach of the peace. General Finance Corp., 505 So.2d at 1048 (a repossession is peaceful only if it is done "without risk of injury to the secured party, the debtor, or any innocent bystanders"). "[W]hether the actions taken by a secured creditor to repossess collateral involves... an unreasonable likelihood of a breach of the peace in light of the time and manner in which the repossession occurred is ordinarily a question of fact to be determined by a jury." Madden v. Deere Credit Servs., Inc., 598 So.2d 860, 867 (Ala. 1992). Moreover, a repossession accomplished by trick or deceit is wrongful and actionable. Big Three Motors, Inc. v. Rutherford, 432 So.2d 483 (Ala.1983), and Ford Motor Credit Co. v. Byrd, 351 So.2d 557 (Ala.1977).
The oral agreement by CAC to allow the Thrashes until the end of April to make their delinquent payments suspended the right of CAC to repossess the car until the end of April. Thus, the repossession of the car and the entry onto the Thrashes' property nearly a week before the end of April were without authority or right. See Big Three Motors, supra. The act of GCRS in pouring detergent in the Thrashes' carport was the means of the repossession, was a breach of the peace, and was the proximate cause of Mr. Thrash's injuries. Moreover, the acts of CAC in granting the Thrashes more time to pay and contemporaneously ordering the premature repossession of the car constituted deceit and trickery and rendered the repossession wrongful. Big Three Motors. Thus, the Thrashes are entitled to proceed against CAC for its own wrongful repossession and for the trespass, wantonness, and negligence by GCRS constituting a breach of the peace and a breach of a nondelegable duty. See General Finance, Big Three Motors, and Ford Motor Credit, supra.
MOORE, Chief Justice (concurring in part and dissenting in part).
I concur with the majority's holding that Kenneth Thrash and Kathryn Thrash presented substantial evidence indicating that Credit Acceptance Corporation ("CAC") had reserved the right of control over the manner in which Gulf Coast Recovery Services & Storage, Inc. ("GCRS"), repossessed the Thrashes' vehicle.
I dissent from the majority's holding that the Thrashes presented substantial evidence indicating that GCRS committed a breach of the peace and entered the Thrashes' premises unlawfully when it repossessed the Thrashes' vehicle. GCRS placed liquid dish-washing soap on the Thrashes' driveway and carport because it could not tow the car from its position under the Thrashes' carport. While tearing down the Thrashes' carport to facilitate towing would certainly constitute a breach of the peace in this case, I do not believe that merely placing a water-soluble lubricant under the tires of the Thrashes' car constituted a breach of the peace.
*976 To support the majority's holding that GCRS's actions in this case may constitute a breach of the peace, the majority quotes this Court's statement in Pleasant v. Warrick, 590 So.2d 214 (Ala.1991), that a secured party may repossess collateral "if possession can be accomplished without risk of injury to the secured party or to any innocent bystanders." 590 So.2d at 216 (quoting General Finance Corp. v. Smith, 505 So.2d 1045 (Ala.1987)). In my opinion, the majority opinion places undue emphasis on this "risk-of-injury" language in Pleasant, to the exclusion of the plain meaning of the phrase "breach of the peace" and this Court's interpretations of that phrase.
Interestingly, the majority opinion does not cite the more recent case of Madden v. Deere Credit Servs., Inc., 598 So.2d 860 (Ala.1992), in which this Court discussed at length the meaning of the phrase "breach of the peace." In Madden, this Court turned to, inter alia, the Restatement (Second) of Torts § 183 (1965), for an explanation of a secured creditor's right of repossession:
"`Except as otherwise agreed, a conditional vendor ... of a thing who is entitled to immediate possession thereof ... is privileged, at a reasonable time and in a reasonable manner, to enter land in the possession of the vendee ... for the purpose of taking possession of the thing and removing it from the land.'"
598 So.2d at 865. Contrary to the implicit holding by the majority in this case, the slightest risk of injury to the secured party that may arise from a repossession tactic does not render such tactic unreasonable. I believe that GCRS's repossession tactics were entirely reasonable and, therefore, did not constitute a breach of the peace.
NOTES
[1] CAC did not argue that there was no substantial evidence that GCRS had acted negligently in leaving the lubricant on the pavement of the carport.